**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 8, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AILEEN MURPHY,

      Plaintiff-Appellant,

v.

DELOITTE & TOUCHE GROUP
INSURANCE PLAN; METROPOLITAN
LIFE INSURANCE COMPANY,

      Defendants-Appellees.

No. 09-2028

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:08-CV-00025-RHS-LFG)**

---

Robert J. Rosati, Fresno, California, appearing for Plaintiff-Appellant.

Jack M. Englert, Jr., Holland & Hart, LLP, Greenwood Village, Colorado (Kristina
Martinez, Holland & Hart, LLP, Santa Fe, New Mexico, with him on the brief),
appearing for Defendants-Appellees.

---

Before **KELLY, EBEL,** and **TYMKOVICH,** Circuit Judges.

---

**EBEL**, Circuit Judge.

Plaintiff-Appellant Aileen Murphy was a participant in the Deloitte & Touche Group Insurance Plan ("the Plan"), an insurance plan governed by the Employee Retirement Income Security Act ("ERISA"). Metropolitan Life Insurance Company ("MetLife") both insured and administered the Plan; thus, it operated under an inherent dual role conflict of interest, see Weber v. GE Group Life Assurance Co., 541 F.3d 1002, 1011 (10th Cir. 2008). While a participant in the Plan, Ms. Murphy filed a claim for long-term disability benefits, which MetLife ultimately denied.

Ms. Murphy then sought judicial review of MetLife's decision pursuant to 29 U.S.C. § 1132(a)(1)(B) and all parties agreed to proceed before a magistrate judge. Soon after filing her action, Ms. Murphy moved for discovery regarding MetLife's dual role conflict of interest. The magistrate judge denied Ms. Murphy's discovery request because the conflict of interest was apparent on the face of the administrative record, which rendered discovery on that issue unnecessary. Then, upon receiving motions for summary judgment from both sides, the magistrate judge granted summary judgment in favor of the Plan and MetLife.

On appeal, Ms. Murphy challenges the magistrate judge's denial of her discovery request and its grant of summary judgment for the defendants. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we VACATE the magistrate judge's discovery and summary judgment orders and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

Ms. Murphy worked as a Tax Firm Director for Deloitte & Touche. Her position entailed travel, significant interaction and coordination with others, negotiations with the Internal Revenue Service and clients, advising clients on complex matters, preparation of proposals, and leading client meetings.

While at Deloitte & Touche, Ms. Murphy participated in the Plan, which was governed by ERISA and provided long-term disability benefits for plan participants. All parties agree that to receive long-term disability benefits Ms. Murphy had to satisfy the Plan's definition of "Total Disability" or "Totally Disabled":

> [D]ue to an injury or Sickness, you:
> 1. are completely and continuously unable to perform each of the material duties of your regular job; and
> 2. require the regular care and attendance of a Doctor.
>
> However, after the first 24 months of benefit payments, you must also be completely unable to perform the duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience, and past earnings.

(Aplt. App. v.2 at 152.) The Plan requires that the claimant furnish "[w]ritten proof of a claim" that "describe[s] the event, the nature, and the extent of the cause for which a claim is made." (Id. at 157.) To receive disability benefits, the furnished proof must "be satisfactory" to the Plan, and the Plan reserves the right to have the claimant examined by doctors of its choice. (Id.)

In August 2006, Ms. Murphy first submitted a claim for long-term disability benefits under the Plan. Her primary care physician, Dr. Frances Chavez, provided Ms. Murphy with two letters supporting her disability claim. In a June 2006 letter, Dr.

3

Chavez diagnosed Ms. Murphy with "ataxic gait" and "blurred vision" and described her symptoms to include "loss of balance, parasthesias, difficulty with speech, malaise, memory loss, [and] blurry vision." (Id. at 344.) Dr. Chavez also described Ms. Murphy as "unable to communicate clearly" and struggling to recall and focus with numbers. (Id.)

In a subsequent letter dated August 2006, Dr. Chavez revised her diagnosis, but explicitly restated her conclusion that Ms. Murphy could not perform any "aspect of [her] job duties." (Id. at 393.) Dr. Chavez now diagnosed Ms. Murphy as suffering from "[l]umbar spinal stenosis" and "[m]emory [d]isturbance." (Id. at 392.) She described her symptoms to include "back pain, leg pain, extreme fatigue, balance [and] vision problems" as well as memory problems, greatly diminished focus and attention, and adversely affected cognitive disabilities. (Id.) Dr. Chavez noted that she had prescribed Ms. Murphy Oxycontin and that her "back [and] leg pain [were] currently responding to [the] painkillers." (Id. at 392-93.)

Ms. Murphy also submitted reports, letters, or notes from a psychiatrist, Dr. Mustafa Ziyalan, a neurologist, Dr. Elizabeth Lakind, and an orthopedic surgeon, Dr. Claude Gelinas. Dr. Ziyalan noted that Ms. Murphy had been hospitalized in 2005 for suicidal ideation and diagnosed with Major Depressive Disorder and Panic Disorder, but describes her depression as "recurrent, in full remission." Id. at 391. Dr. Lakind explained that Ms. Murphy suffered from a "lumbar spine disease," but that Ms. Murphy was "now on pain medications with good benefit." Id. at 396. Dr. Lakind also noted that in June 2006 Ms. Murphy had undergone a cranial MRI, an EEG, and a Brain SPECT

4

and each produced normal results, but a cervical MRI raised some concerns with her spinal discs. Finally, Dr. Gelinas also diagnosed Ms. Murphy as suffering from "[j]unctional stenosis and degenerative disc disease" in her spine, and he described her as suffering from antalgic gait that significantly limited her range of motion. (Id. at 407.)

Despite this information, MetLife denied Ms. Murphy's claim in September 2006. It "found no clinical evidence to substantiate [the] restrictions and limitations" described by Dr. Chavez and "no objective clinical evidence or documentation to support [Ms. Murphy's] subjective complaints." (Id. at 349-50.) MetLife noted that Ms. Murphy informed it over the phone that Oxycontin controlled her pain, she no longer used a walker, and she had left her job because cognitive problems impaired her performance. MetLife further noted that Ms. Murphy's EEG produced normal results, she declined to have surgery to address her back pain, and she failed to have follow-up tests to rule out an otologic cause as the source of some of her problems, which an Ear, Nose, and Throat specialist suggested as a possibility. Therefore, MetLife found "no medical documentation to substantiate restrictions and limitations or a level of impairment of such severity" that Ms. Murphy was "preclude[d] . . . from performing [her] sedentary job." (Id. at 350.)

Ms. Murphy appealed MetLife's decision and supplemented the administrative record with a variety of information. Dr. Chavez provided additional information confirming Ms. Murphy's disability, and she expanded her diagnosis to include ataxic gait, blurred vision, lumbar spinal stenosis, memory disturbance, Major Depressive Disorder, and Anxiety Disorder. She also submitted documentation that in October 2006

5

she had a suicidal ideation, was admitted to the hospital where she remained for one week and was diagnosed with Major Depressive Disorder, though she appears not to have obtained follow-up psychiatric evaluations despite encouragement from Dr. Chavez to do so.

Additionally, a clinical neuropsychologist, Dr. Stephen Chilulli, provided an evaluation from September 2006 in which he found Ms. Murphy's "current intellectual function . . . significantly above average." (Id. at 322.) He explained that "[t]here may be some disruption of [Ms. Murphy's] attention skills," but he also noted that, even in the attention testing, Ms. Murphy performed "some of the more challenging task [sic] . . . . better than some simple attention tasks," which he felt "may be related to anxiety"—a diagnosis consistent with the results of her personality tests. (Id. at 323.) Ultimately, however, Dr. Chilulli concluded that "[t]he results of neuropsychological testing are negative for evidence of brain dysfunction, with measures of higher cortical functions often being in the high average to superior range." (Id.)

A separate neurologist, Dr. William Weng, also concluded that Ms. Murphy's "mental status appears to be fluidly intact," though he expressed concern that Ms. Murphy may suffer from depression and anxiety and that her combination of medications may impact her cognitive function. (Id. at 325.)

Metlife reviewed Ms. Murphy's additional materials but again denied her claim. It enlisted two independent physicians to review Ms. Murphy's claim—a neurologist, Dr. Bruce LeForce, and a neuropsychologist, Dr. Carol Walker. Both independent physicians reviewed Ms. Murphy's file and concluded that her records did not support her claim for

6

disability, though neither personally examined Ms. Murphy. The independent physicians acknowledged Ms. Murphy's physical injury to her spine, but noted that her physical pain was controlled by her medication. As to Ms. Murphy's claims of cognitive impairment, the independent physicians concluded that Dr. Chilulli's and Dr. Weng's evaluations did not support Ms. Murphy's claims of cognitive impairment. Moreover, Dr. Walker spoke with Dr. Chavez by phone in March 2007, and Dr. Chavez then indicated that Ms. Murphy's "cognition appears clear and there are no signs she is over-medicated." (Id. at 234). As to Ms. Murphy's depression and anxiety, Dr. Walker explained that Dr. Ziyalan had previously diagnosed Ms. Murphy's depression as in full remission and that while Ms. Murphy had been subsequently hospitalized for suicidal ideation, her failure to follow-up with a psychiatrist left uncertainties as to the ongoing seriousness of the depression and anxiety Ms. Murphy suffered. (Id.)

Ms. Murphy subsequently filed this action in federal court seeking a review of MetLife's decision and both parties consented to proceed before a magistrate judge. Ms. Murphy initially sought discovery, which it describes as limited to MetLife's dual role conflict as administrator and payor of the Plan, but the magistrate judge denied the discovery request. The magistrate judge then granted MetLife and the Plan's motion for summary judgment. Ms. Murphy now appeals those orders.

## DISCUSSION

### I.    Discovery

We first address Ms. Murphy's claim that the district court erred in denying her request for discovery related to MetLife's dual role conflict of interest. She argues that

7

the Supreme Court's recent decision in <u>Metropolitan Life Insurance Co. v. Glenn</u>, 554 U.S. 105, 128 S.Ct. 2343 (2008), changed the legal landscape for discovery in ERISA cases involving dual role conflicts of interest, and the district court failed to apply this new approach. We review de novo whether the district court employed the correct legal standard for discovery. <u>See</u> <u>Neiberger v. Fed Ex Ground Package Sys., Inc.</u>, 566 F.3d 1184, 1189 (10th Cir. 2009) (reiterating the general proposition that we review de novo whether the district court applied the proper legal standard at issue). Although we disagree with Ms. Murphy's proposition that <u>Glenn</u> changed our standard for discovery, we believe the lack of clarity in our case law on this issue and the <u>Glenn</u> decision suggest we should clarify the appropriate standard for discovery related to a dual role conflict of interest.

**A. Supplementation of the Administrative Record Generally**

In an ERISA case where, as here, the plan "'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'" we review the administrator's decision for an abuse of discretion. <u>Holcomb v. Unum Life Ins. Co. of Am.</u>, 578 F.3d 1187, 1192 (10th Cir. 2009) (quoting <u>Fought v. Unum Life Ins. Co. of Am.</u>, 379 F.3d 997, 1002-03 (10th Cir. 2004), <u>abrogated on other grounds by</u> <u>Glenn</u> 128 S.Ct. at 2351); <u>see also</u> <u>Weber</u>, 541 F.3d at 1010 n.10 (describing terms "arbitrary and capricious" and "abuse of discretion" as interchangeable in this context). Our cases, however, have failed to provide clear guidance to the district court regarding the appropriate standard for resolving discovery requests in these types of cases. <u>See</u> <u>Kohut v. Hartford Life and Accident Ins. Co.</u>, --- F. Supp. 2d. ---, 2008 WL

8

5246163, *12 (D. Colo. Dec. 16, 2008) (describing our case law as exhibiting "judicial schizophrenia").

As a starting point, we have frequently, consistently, and unequivocally reiterated that, "'in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record.'" Weber, 541 F.3d at 1011 (quoting Fought, 379 F.3d at 1003); see also, e.g., Holcomb, 578 F.3d at 1192 (10th Cir. 2009) (citing Fought, 379 F.3d at 1003); Fought, 379 F.3d at 1003 (citing Hall v. Unum Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002)); Hall, 300 F.3d at 1201 (citing Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 380-81 (10th Cir. 1992), and Woolsey v. Marion Labs., 934 F.2d 1452, 1460 (10th Cir. 1991)); Sandoval, 967 F.2d at 380 (citing out-of-circuit cases); Woolsey, 934 F.2d at 1460 (citing out-of-circuit cases). Because we generally restrict district courts' review of an administrator's decision to the administrative record and because Federal Rule of Civil Procedure 26(b)(1) permits discovery only where it "appears reasonably calculated to lead to the discovery of admissible evidence," extra-record discovery would generally seem inappropriate.

However, even as we have told district courts to limit their analysis to the administrative record, we have also instructed the district courts to assess the effect of a dual role conflict of interest in a manner that seems incompatible with a flat prohibition on extra-record discovery and supplementation. If an administrator operates under a dual role conflict of interest, the district court must always weigh the conflict of interest in its abuse of discretion analysis, but it must allocate the conflict more or less weight

9

depending on its seriousness.[1]  See Weber, 541 F.3d at 1010.  But, without discovery, a

claimant may not have access to the information necessary to establish the seriousness of

the conflict.  Similarly, the administrator may not be fully able to rebut a claim of conflict

by showing that it "has taken active steps to reduce potential bias and to promote

accuracy, for example, by walling off claims administrators from those interested in firm

finances."  Glenn, 128 S.Ct. at 2351.  And, if the district court cannot consider material

beyond the administrative record, it may not be able to fulfill its judicial task of allocating

the proper weight to the conflict of interest.  If the administrative record does not

specifically address these issues and if we flatly prohibited the consideration and

---

[1] In 2008, the Supreme Court clarified that the presence of a dual role conflict does not alter the level of deference accorded an administrator's decision, and instead we must weigh the conflict "as a factor in determining whether there is an abuse of discretion," according it more or less weight depending on its seriousness.  Glenn, 128 S.Ct. 2350-52 (quotation omitted).  Prior to Glenn, we described our approach to dual role conflicts as "'a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict.'"  Weber, 541 F.3d at 1010 (quoting Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1190 (10th Cir. 2007), abrogated on other grounds by Glenn, 128 S.Ct. at 2351) (further quotation omitted).  Because we emphasized that we "will always apply an arbitrary and capricious standard" of review even where dual role conflicts exist, we have interpreted our pre-Glenn approach as consistent with Glenn.  Weber, 541 F.3d at 1010-11 (quotation omitted) (describing the two approaches as mirroring each other).  However, because we have occasionally used the phrase "dial back our deference" to describe our analysis in cases of dual role conflicts, see id. at 1010, we pause to emphasize that this language means only that we will weigh the conflict of interest as a factor in our abuse of discretion analysis, and we will weigh it more or less heavily depending on the seriousness of the conflict, see id. at 1011 ("[W]e still employ the arbitrary and capricious standard, but we will weigh [an administrator's] conflict of interest as a factor in determining the lawfulness of the benefits denial.").

discovery of information outside the administrative record, the district court may not be able to make a fully informed analysis that properly weighs the conflict of interest.[2]

This seeming tension in our case law, however, naturally resolves itself if we recall the origins of our language that speaks in terms of a flat rule against a district court's consideration of extra-record information. Our first two cases to adopt this restriction from other circuits were Woolsey v. Marion Laboratories, 934 F.2d 1452, 1460 (10th Cir. 1991) (citing Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990), and Voliva v. Seafarers Pension Plan, 858 F.2d 195, 196 (4th Cir. 1988)), and Sandoval v. Aetna Life & Casualty Insurance Co., 967 F.2d 377, 380-81 (10th Cir. 1992) (citing Perry, 900 F.2d at 967, and Voliva, 858 F.2d at 196). In both Sandoval and Woolsey, we articulated the rule against extra-record supplementation in the context of rejecting a claimant's efforts to supplement the record with substantive evidence of his eligibility for benefits, such as additional evidence of disability. See Sandoval, 967 F.2d. at 380-81 (rejecting district court's consideration of psychological evaluations not submitted to the plan administrator and explaining that "[i]n effect a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision.") (emphasis added); Woolsey, 934 F.2d at 1460 (stating in the

_____

[2] To the extent these materials are not contained in the record, both the administrator and the plan participant will suffer an inability to present evidence related to the conflict. However, the administrator has better access to information regarding the steps it has taken and could include these materials in the administrative record if it so chooses. So the greater prejudice of prohibiting extra-record discovery falls on the claimant.

11

context of discussing the substantive evidence that supported an administrator's decision concerning the disbursement of benefits that, "[i]n determining whether the decision was supported by substantial evidence, we consider only the facts before the Administrators at the time of their decision") .

In this context, a general prohibition on extra-record supplementation makes sense. Both a plan participant and an administrator have a fair opportunity to include in the record materials related to the participant's eligibility for benefits. Because the administrator must base its decision on the materials included in the administrative record, a district court would have no justification for concluding that an administrator abused its discretion by failing to consider materials never submitted to it for inclusion in the administrative record.[3] See Sandoval, 967 F.2d at 381 ("If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence."). As we explained in Sandoval, a plan participant "is not entitled to a second chance to prove his disability."[4] Id.

---

[3] An administrator, however, may be found to have abused its discretion where it refuses to consider materials submitted for its review by the plan participant. Cf. Nance v. Sun Life Assurance Co. of Canada, 294 F.3d 1263, 1269 (10th Cir. 2002) (rejecting claimant's argument that a district court should consider substantive evidence of his disability submitted after administrator had issued its final denial of benefits because claimant had not shown the administrator acted in arbitrary and capricious manner by declining to reopen the claim based on claimant's additional submissions).

[4] Even in ERISA cases where we review the administrator's decision de novo, as for example where the plan does not vest discretion in the administrator to interpret the plan, we have "emphasize[d] that ERISA policy strongly disfavors expanding the record beyond that which was available to the plan administrator" and "[s]upplemental evidence should not be used to take a second bite at the apple, but only when necessary to enable the court to understand and evaluate the decision under review." Jewell v. Life Ins. Co.

12

Other policy concerns also support a general rule against supplementation of the record on the merits issue of disability. In particular, Congress designed ERISA "to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." Id. at 380 (quotation omitted). Allowing the district court to go beyond its limited scope of review and consider extra-record materials would undermine this goal, and both prolong the decisionmaking process and inject greater uncertainty into that process. See id.

Although we have frequently used broad language to describe our restriction on extra-record discovery and supplementation, the breadth of that language can be misleading, at least to some degree. In fact, in Sandoval we did not use the absolutist language that we have shifted towards in some later cases. See id. (stating that "the district court generally may consider" only materials contained in the administrative record) (emphasis added). While Woolsey used more absolute language, as stated previously, it used that language in the context of addressing a district court's consideration of substantive evidence of eligibility not included in the record. 934 F.2d at 1460. And like both Woolsey and Sandoval, most of our subsequent cases have employed this restriction with respect to substantive evidence of eligibility, or simply reiterated the restriction in rote form without substantive discussion of its scope. See,

of N. Am., 508 F.3d 1303,1309 (10th Cir. 2007). Thus, even under de novo review, a party still cannot supplement the record with substantive evidence of disability absent a showing that the evidence (1) is necessary, (2) could not have been presented to the administrator at the time it made its decision, (3) is not cumulative or repetitive, and (4) is not "'simply better evidence than the claimant mustered for the claim review.'" Id. (quoting Hall, 300 F.3d at 1203) (further quotation omitted).

13

e.g., Holcomb, 578 F.3d at 1192 (reciting general proposition that a court's review is limited to the administrative record without further comment); Weber, 541 F.3d at 1008 n.7, 1011 (refusing to consider extra-record materials offered to prove substantive eligibility for benefits); Flinders, 491 F.3d at 1190-91 (explaining that district court could review reasonableness only of rationale for denying claim that is asserted in the administrative record because the restriction on review of extra-record materials also prevents an administrator from submitting extra-record materials or theories); Adamson v. Unum Life Ins. Co. of Am., 455 F.3d 1209, 1212-14 (10th Cir. 2006) (noting court's limitation to the record under abuse of discretion review without further comment); Gaither v. Aetna Life Ins. Co., 388 F.3d 759, 767-68 (10th Cir. 2004) (same); Allison v. Unum Life Ins. Co. of Am., 381 F.3d 1015, 1021 (10th Cir. 2004) (same); Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 379 F.3d 1168, 1176 (10th Cir. 2004) (same); Nance, 294 F.3d at 1269 (rejecting claimant's argument that district court should consider substantive evidence of his disability submitted after administrator had issued its final decision); Hall, 300 F.3d at 1201 (same); Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999) (same); Chambers v. Family Health Plan Corp., 100 F.3d 818, 824 (10th Cir. 1996) (holding that Sandoval prevents review of substantive extra-record evidence regarding claimant's eligibility for benefits and declining to address whether procedural irregularities affect a district court's scope of review).

Specifically, the broad language prohibiting extra-record discovery is potentially misleading in cases involving a dual role conflict of interests or procedural irregularities.

14

In fact, some of our cases contemplate the possibility that a district court may permit extra-record discovery related to a dual role conflict of interest. In Wolberg v. AT&T Broadband Pension Plan, 123 Fed. App. 840 (10th Cir. 2005) (unpublished),[5] the plan participant argued that the plan administrator had a standard conflict of interest, which meant that the plan participant bore the burden to prove the conflict existed and jeopardized the administrator's decisionmaking process. Id. at 845. Although we reiterated the general principle that "[i]n ERISA cases [our] review is confined to the administrative record," id. at 844-45, we explicitly criticized the plan participant for failing to seek discovery that could have proven the seriousness of the conflict of interest. Id. at 846 n.3. Because we would not have criticized the plan participant for failing to seek discovery on the conflict of interest if discovery and supplementation of the record on that issue were never available, we necessarily implied that, at least in some circumstances, discovery related to a conflict of interest may be available.[6] Cf. Weber,

---

[5] Of course, unpublished orders and judgments do not establish binding precedent in our circuit, but they may occasionally be referenced for illustrative purposes.

[6] In Fought v. Unum Life Insurance Co. of America, the magistrate judge denied a claimant's request for discovery "into the extent of [the administrator's dual-role] conflict of interest." 379 F.3d at 1001. Although we noted the general restriction on extra-record discovery and supplementation, see id. at 1003, and also noted that the plan administrator had "persistently resisted discovery as to the extent of that conflict," id. at 1007, we never explicitly addressed whether the denial of the claimant's discovery request was appropriate or the standard for addressing such a discovery request, see id. at 1014 (concluding only that the district court erred in upholding the administrator's decision as reasonable).

　　Similarly, other cases relied on by MetLife and the Plan, e.g., Spencer v. Arkansas Blue Cross & Blue Shield, 205 Fed. App. 652, 654 (10th Cir. 2006) (unpublished); Geddes v. United Staffing Alliance Employee Medical Plan, 469 F.3d 919, 927-28 (10th

541 F.3d at 1011 (noting, in a case involving an administrator with an inherent dual role conflict of interest, that the court was left to its "own analytic devices" in assessing the administrator's reasonableness in lights of its conflict, in part, because "the record reveal[ed] little about [the administrator's] claims assessment process"). And district courts within our circuit have recognized that "limited discovery for the purpose of determining the scope of a conflict of interest" may be appropriate. Paul v. Hartford Life and Accident Ins. Co., No. 08-cv-00890, 2008 WL 2945607, *2 (D. Colo. July 28, 2008) (unreported) (compiling cases and concluding that "while it would not be proper to allow Plaintiff to conduct discovery directed to the factual merits of his claim, this Court will permit limited discovery related to the alleged conflict of interest in this case and to the policies and procedures used by [the administrator] to make its decision"); see also, e.g., Kohut, 2008 WL 5246163, *10-*13 (interpreting Tenth Circuit law to permit discovery related to the seriousness of a conflict of interest).

More to the point, the Supreme Court's decision in Glenn contemplates the possibility of extra-record discovery related to a dual role conflict of interest. In Glenn, the Supreme Court explained that a conflict of interest weighs more heavily against an administrator where it has a history of biased claims administration. 128 S.Ct. at 2351. As an example of this situation, Glenn cited to a law review article by John Langbein that

Cir. 2006); DeGrado v. Jefferson Pilot Financial Insurance Co., 451 F.3d 1161, 1166, 1169 (10th Cir. 2006); Roach v. Prudential Life Insurance Brokerage, 62 Fed. App. 294, 298-99 (10th Cir. 2003) (unpublished); Kaus v. Standard Insurance Co., 162 F.3d 1173, 1998 WL 778055, *2-*4 (10th Cir. 1998) (unpublished), are also not determinative of the issue of when discovery related to a conflict of interest is appropriate.

16

detailed the history of one company's biased administration of claims. See id. (citing John H. Langbein, Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U. L. Rev. 1315, 1317-21 (2007). That article details how various investigations and lawsuits unrelated to benefit denial claims (e.g., wrongful termination claims by former employees) revealed that an insurer pressured its employees and physicians to deny claims without proper analysis yet instructed them to use language that a court would find adequate to support the denial. Langbein, supra, 101 Nw. U. L. Rev. at 1317-21. This type of pressure was most apparent in cases of "subjective illnesses" that did not show up on x-rays, MRIs, and other objective medical tests (e.g., "mental illness, chronic pain, migraines, or even Parkinsons"). Id. at 1319 (quotation omitted). Although the Supreme Court did not explicitly state that the district court could consider extra-record materials or that a claimant could discover extra-record materials, it must have contemplated that, at least in some cases, discovery and consideration of extra-record materials may be necessary and appropriate as an administrative record is not likely to contain the details of a history of biased administration of claims as discussed in Langbein's article. See Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3d 1, 10 (1st Cir. 2009) ("The majority opinion in Glenn fairly can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict.") (dicta); see also id. at 11 (Lipez, J., concurring) (agreeing with majority that Glenn contemplates discovery related to a dual role conflict of interest but criticizing the majority for reaching that question unnecessarily and taking an unnecessarily limited view on the availability of

17

discovery); <u>Johnson v. Conn. Gen. Life Ins. Co.</u>, 324 Fed. App. 459, 466-67 (6th Cir. 2009) (unpublished) (indicating that <u>Glenn</u> is consistent with the Sixth Circuit's prior case law that permits discovery related to a dual role conflict of interest and procedural irregularities); <u>Wilcox v. Wells Fargo & Co. Long Term Disability Plan</u>, 287 Fed. App. 602, 603-04 (9th Cir. 2008) (unpublished) (explaining that <u>Glenn</u> permits "consideration of evidence outside of the administrative record to determine the appropriate weight to accord the conflict of interest factor").

For the reasons we have discussed above, then, we conclude that our case law prohibits courts from considering materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits. <u>See</u> <u>Sandoval</u>, 967 F.3d at 380. Our cases and the Supreme Court's decision in <u>Glenn</u>, however, contemplate that this general restriction does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest. Therefore, discovery related to the scope and impact of a dual role conflict of interest may, at times, be appropriate, and we now turn to elucidating the standard for addressing discovery requests related to a dual role conflict of interest.

**B. Standard for discovery related to a dual role conflict of interest**

Just as our cases have not clearly delineated between supplementation of the record with evidence of a claimant's eligibility for benefits and supplementation with evidence of the seriousness of a conflict of interest, our cases have also failed to articulate in plain terms the standard for discovery beyond the administrative record related to a dual role conflict of interest of an ERISA plan administrator. The Supreme Court in

18

Glenn counseled against special procedural and evidentiary rules in this context. 128 S.Ct. at 2351. We take that counsel to apply also to discovery rules, which in this case will then be governed by the familiar standards of Federal Rule of Civil Procedure 26(b).

As stated previously, in Glenn, the Supreme Court held that the district court weighs a dual role conflict as one factor in its abuse of discretion analysis, allocating it more or less weight depending on its seriousness. 128 S.Ct. at 2350-51. In reaching this conclusion, the Supreme Court rejected other approaches to handling a dual role conflict, such as shifting to the administrator the burden of proving its decision was reasonable. See Holcomb 578 F.3d at 1192-93 (explaining that Glenn abrogated our burden-shifting scheme). Glenn explained that it was not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." 128 S.Ct. at 2351.

We take Glenn's admonition against special rules to apply beyond the particular issue addressed in Glenn. We think it also commands that we not create any special rules for discovery related to a dual role conflict of interest. Instead, we must apply Federal Rule of Civil Procedure 26(b) to discovery requests seeking information related to a dual role conflict of interest, just as we would apply that rule to other discovery requests.

Although Rule 26(b) will govern these (and other) discovery requests in ERISA cases, we emphasize that neither a claimant nor an administrator should be allowed to use discovery to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim. In fact, for the reasons that follow, discovery related to a conflict of interest may often prove inappropriate.

19

Rule 26(b) will not permit unlimited discovery. Rule 26(b)(1) permits discovery only of "[r]elevant information" and the discovery must "appear[] reasonably calculated to lead to the discovery of admissible evidence." Moreover, all discovery is limited by Rule 26(b)(2), which protects against, inter alia, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests. See Fed. R. Civ. P. 26.2(b)(2)(C)(i) & (ii); cf. Hall, 300 F.3d at 1203 (explaining that even in de novo review "[c]umulative or repetitive evidence . . . should not be admitted").

In exercising its discretion over discovery matters under Rule 26(b), district courts will often need to account for several factors that will militate against broad discovery. First, while a district court must always bear in mind that ERISA seeks a fair and informed resolution of claims, ERISA also seeks to ensure a speedy, inexpensive, and efficient resolution of those claims. See Jewell, 508 F.3d at 1308 (noting ERISA's "goal of prompt resolution of claims by the fiduciary") (quotation omitted). And while discovery may, at times, be necessary to allow a claimant to ascertain and argue the seriousness of an administrator's conflict, Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition. See Fed. R. Civ. P. 26(b) & (b)(2); see also Crawford-El v. Britton, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly."). The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety. Cf. Hall, 300 F.3d at 1203 (explaining that, where district court reviews an administrator's decision de novo, "[t]he party seeking to supplement the record bears the burden of establishing why the district court should

20

exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review").

Second, in determining whether a discovery request is overly costly or burdensome in light of its benefits, the district court will need to consider the necessity of discovery. Cf. Hancock v. Metro. Life Ins. Co., 590 F.3d 1141, 1155 (10th Cir. 2009) (explaining that "a conflict of interest affects the outcome at the margin, when we waver between affirmance and reversal"). For example, the benefit of allowing detailed discovery related to the administrator's financial interest in the claim will often be outweighed by its burdens and costs because the inherent dual role conflict makes that financial interest obvious or the substantive evidence supporting denial of a claim is so one-sided that the result would not change even giving full weight to the alleged conflict.[7] Similarly, a district court may be able to evaluate the effect of a conflict of interest on an administrator by examining the thoroughness of the administrator's review, which can be evaluated based on the administrative record. And, without further discovery, a district court may allocate significant weight to a conflict of interest where the record reveals a lack of thoroughness.

---

[7] To be clear, the administrator's financial interest in the claim might be apparent and discovery related to that interest will often be unwarranted. However, the extent to which the administrator has insulated its decisionmaking process from its financial interest may not be obvious. For example, discovery related to how an administrator structures its compensation for the independent physicians that reviewed a plan participant's claim might be appropriate to determine if the administrator took steps to insulate the independent reviewers from the administrator's obvious financial interest.

21

The above considerations are simply some factors a district court may include in its calculus when addressing a discovery request in an ERISA case. A district court has substantial discretion in handling discovery requests under Rule 26(b). See Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995) ("Generally, control of discovery is entrusted to the sound discretion of the trial courts[.]") (quotation, alteration omitted). Although in exercising that discretion the district court must bear in mind both the need for a fair and informed resolution of the claim and the need for a speedy, inexpensive, and efficient resolution of the claim, we will not disturb a district court's exercise of discretion unless it has abused that discretion. See Ridenour v. Kaiser-Hill Co., 397 F.3d 925, 938 (10th Cir. 2005) ("We review discovery rulings for an abuse of discretion.").

## C. Resolution of Ms. Murphy's discovery request

As stated previously, we review de novo whether the district court employed the correct legal standard in resolving a discovery request. See Neiberger, 566 F.3d at 1189. And, if it has employed the correct legal standard, we review its exercise of discretion for an abuse of discretion. See Ridenour, 397 F.3d at 938.

Here, we do not think the magistrate judge resolved Ms. Murphy's discovery request under the correct legal standard. The magistrate judge began his analysis by acknowledging that "[d]iscovery may be permitted in ERISA cases to ascertain whether a conflict of interest exists." (Aplt. App. v.1 at 85.) But after some discussion that discovery may be permitted in some circumstances, the magistrate judge concluded that because MetLife conceded it served as both the administrator and insurer of the Plan, its conflict of interest was "now 'apparent' [and] further discovery into the conflict [was] not

22

required." (Id. at 87.) He appears to have read our admittedly unclear case law as prohibiting any discovery related to the seriousness of an inherent dual role conflict of interest or efforts to mitigate any conflict of interest. The magistrate judge's conclusion, however, paints with too broad a brush. Ms. Murphy might be able to argue that discovery, appropriately circumscribed, is appropriate to allow her to determine, and present evidence on, the seriousness of the inherent conflict and the likelihood that it jeopardized MetLife's decisionmaking process in her case.[8] Therefore, we think it is appropriate to vacate the district court's denial of Ms. Murphy's request for discovery so that it may reconsider that request in light this opinion.[9]

## II.     The denial of Ms. Murphy's claim

Because we have vacated the district court's order denying Ms. Murphy's discovery request, we need not resolve Ms. Murphy's argument that the magistrate judge erred in upholding MetLife's denial of her claim for long-term disability benefits. Instead, we vacate the magistrate judge's order granting summary judgment in favor of

---

[8] Of course, MetLife will have an opportunity to respond with its own evidence that the conflict did not jeopardize its decisionmaking process.

[9] The magistrate judge was understandably concerned by the breadth of Ms. Murphy's discovery request, which sought extensive evidence of how the administrator and independent physicians had resolved other cases. (Aplt. App. v.1 at 82-83.) We appreciate the magistrate judge's concern that this discovery could create a morass of secondary and remote arguments going to which other cases are comparable and relevant to showing prejudice or bias in this case. The utility of such expansive discovery is likely in all but the most unusual cases to be outweighed by the burdensomeness and costs involved. In any event, the balancing of these concerns will be vested in the sound discretion of the magistrate judge upon remand.

MetLife and the Plan because the magistrate judge's resolution of the discovery issue may affect its analysis of the merits.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's orders denying Ms. Murphy's discovery request and granting summary judgment in favor of MetLife and the Plan. We REMAND for further proceedings consistent with this opinion.