FILED
United States Court of Appeals
Tenth Circuit

June 18, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GINA M. NELSON,

Plaintiff-Appellant,

v.

AETNA LIFE INSURANCE
COMPANY, a corporation; BANK OF
AMERICA GROUP BENEFITS
PROGRAM, an ERISA Employee
Welfare Benefit Plan,

Defendants-Appellees.

No. 13-5073
(D.C. No. 4:09-CV-00594-JHP)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Gina M. Nelson appeals from the district court's judgment affirming the denial

of her request for benefits under disability insurance policies governed by the

Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

§§ 1001-1461. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Ms. Nelson worked for Bank of America as a premier accounts manager. Bank of America provided short-term disability (STD) and long-term disability (LTD) benefits to eligible employees under the Bank of America Group Benefits Program (Plan), which is governed by ERISA. Defendant Aetna Life Insurance Company (Aetna) insured the LTD component of the Plan. Aetna was also the claims administrator of the entire Plan and had discretionary authority to determine benefits eligibility. Among other things, the Plan defines disability for STD benefits and the first eighteen months of LTD benefits as being unable to perform all the material and substantial duties of a claimant's particular occupation. After eighteen months, the Plan pays LTD benefits only if an injury or disease prevents a claimant from working at any reasonable occupation.

On March 3, 2009, about the time her office was experiencing layoffs, Ms. Nelson notified her manager that she would not be returning to work due to health issues. She then applied for STD benefits, claiming she suffered from a number of ailments, including fibromyalgia, anxiety, fatigue, depression, and pain in the back, neck, and pelvis. Aetna approved Ms. Nelson's request through April 3, 2009, noting that she was expected to return to work on April 20, 2009, as stated by her primary care physician, Dr. Michelle Kelley. Aetna informed Ms. Nelson that if she was unable to return on April 20, she had to submit additional medical evidence supporting a further period of disability to be eligible for continued STD benefits.

Aetna continued to evaluate Ms. Nelson's STD claim, assigning it to a nurse case manager, involving Aetna's behavioral health unit, and ultimately referring Ms. Nelson's medical records to two medical doctors (specialists in internal medicine and orthopedics) for review. Those records included statements from Dr. Kelley and detailed notes from Ms. Nelson's weeklong-visit in March 2009 to the Mayo Clinic in Minnesota for evaluation of lupus, fibromyalgia, chronic fatigue, and pain. Both specialists concluded that the records did not support a functional impairment that would prevent Ms. Nelson from performing the essential functions of her job beyond April 19, 2009. Accordingly, Aetna notified Ms. Nelson that her STD claim was not approved beyond April 20 because there was no objective medical reason she could not perform her job.

Ms. Nelson appealed the denial of her STD claim, but Aetna denied the appeal by letter dated July 24, 2009. Aetna obtained additional medical records from as far back as 1999 and had specialists in Internal Medicine, Physical Medicine and Rehabilitation, Occupational Medicine, Rheumatology, and Psychology review them. The Internal Medicine specialist also contacted Dr. Kelley by telephone. Each of the five specialists prepared a report setting forth a detailed summary of the medical evidence and concluding that it did not support a functional impairment that would prevent Ms. Nelson from performing her job. Relying on those reports, Aetna reasoned that although Dr. Kelley and one of the Mayo Clinic physicians, Dr. Christina Dilaveri, opined that Ms. Nelson's impairments prevented her from

working long-term, those opinions were not supported by any functional examination findings.  The only significant physical exam findings were of fibromyalgia with positive trigger points, diffuse tenderness in her back, and degenerative disc disease in her lower back.  But the evidence showed Ms. Nelson was able to perform all activities of daily living, her lupus was in remission, and a neurological exam on March 11, 2009, performed after Ms. Nelson was involved in a car accident near the end of her visit to the Mayo Clinic, was completely normal.  Moreover, Dr. Kelley confirmed during the telephone conversation with the Internal Medicine specialist that Ms. Nelson had slow movement and some evidence of muscle spasm and muscle-point tenderness consistent with fibromyalgia, but there were no other objective findings, only Ms. Nelson's subjective pain complaints.  As to Ms. Nelson's mental impairments, Aetna noted a diagnosis of generalized anxiety disorder and mild depression, but observed that her mental-status findings were largely normal, that no risk concerns were indicated, and that there was no indication she was not independent in activities of daily living or mobility.  Further, there was no documentation that any of Ms. Nelson's medications were causing side effects that would interfere with her ability to do her job.

After Aetna denied her appeal, Ms. Nelson applied for LTD benefits under the Plan.  Aetna denied that claim in September 2009 based on the fact that Ms. Nelson was not continuously disabled throughout the applicable "eliminations period" for

LTD benefits—the greater of the first 180 days of disability or the period of time during which STD benefits are payable.

Ms. Nelson did not appeal the denial of her LTD claim, but she did file the action underlying this appeal, challenging the denial of both claims. On November 1, 2010, after the parties filed their opening and response briefs, she received notice of a fully favorable decision from the Social Security Administration (SSA) on an application for Disability Insurance Benefits (DIB) she had filed in April 2009. The SSA found she had been disabled since March 4, 2009, one day after she stopped working at Bank of America. Ms. Nelson then filed her reply brief, which asked the district court to supplement the administrative record with the SSA's decision or, in the alternative, to remand the matter back to Aetna so it could consider the SSA's decision. Defendants filed a motion to strike the reply brief and to deny the request to supplement the record. The court granted the motion on two alternate grounds: (1) Ms. Nelson's failure to file a response to it amounted to a confession of the motion under one of the court's local rules and (2) for the reasons stated in the motion. The district court then issued its decision affirming Aetna's denial of benefits. Ms. Nelson appealed.

## II. DISCUSSION

### A. General ERISA standard of review

"We review a plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling." *Holcomb v. Unum Life Ins. Co. of*

*Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009). Because the Plan granted Aetna

discretion to determine benefits eligibility and to construe the terms of the Plan, we

review its decision to determine whether it was arbitrary and capricious. *See Murphy*

*v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010). Under

that standard, Aetna's "decision need not be the only logical one nor even the best

one. It need only be sufficiently supported by facts within [Aetna's] knowledge to

counter a claim that it was arbitrary or capricious." *Kimber v. Thiokol Corp.*,

196 F.3d 1092, 1098 (10th Cir. 1999) (internal quotation marks omitted). We will

uphold Aetna's decision "unless it is not grounded on *any* reasonable basis. [We]

need only assure that [Aetna's] decision falls somewhere on a continuum of

reasonableness—even if on the low end." *Id.* (brackets, citation, and internal

quotation marks omitted).

### B. Order denying request to supplement administrative record

Ms. Nelson takes issue with the district court's order striking her reply brief

and thereby denying her request to supplement the record with the SSA's decision

finding her disabled as of March 4, 2009. We see no error by the district court and

therefore do not consider the SSA decision.[1]

---

[1]     Although we see no abuse of discretion in the district court's treatment of
Ms. Nelson's failure to respond to the motion to strike as a confession of that motion
under the district court's local rule, *see Hernandez v. George*, 793 F.2d 264, 266-67
(10th Cir. 1986) (setting forth abuse-of-discretion standard of review for enforcing
local court rules), we will analyze the merits of the matter because the district court
also ruled on the merits.

It is clearly established in this circuit that, "in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record." *Murphy*, 619 F.3d at 1157 (internal quotation marks omitted). That "general restriction" applies to "extra-record materials sought to be introduced [that] relate to a claimant's eligibility for benefits," but it "does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest" as administrator and insurer of an ERISA plan. *Id.* at 1162. Here, however, the SSA decision concerned Ms. Nelson's eligibility for benefits. As such, it does not fall within *Murphy*'s exception.

Nor do we see any procedural irregularities here that might, as Ms. Nelson argues, permit record supplementation under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955, 972-73 (9th Cir. 2006), or other cases from outside our circuit on which she relies. Ms. Nelson points out that the Plan required her to file for social security disability benefits, contemplated that a claimant might not receive a decision from the SSA for more than two years, and provided that a DIB award would be offset against successful claims under the Plan. She further contends that Aetna knew she had applied for DIB and issued its decision quickly, before the SSA could issue a decision potentially favorable to her. But there is no evidence that Aetna did anything other than comply with regulatory time limits for the determination of claims, which serve to promote ERISA's goal of providing resolutions "inexpensively and expeditiously," *Murphy*, 619 F.3d at 1159 (internal quotation

- 7 -

marks omitted).[2]  Nor is there any indication Ms. Nelson asked Aetna to hold off on a determination of her claim or appeal pending the SSA's decision.  And given the regulatory time limits, it is unclear whether Aetna could have waited the eighteen or so months that elapsed between Ms. Nelson's application for DIB (in April 2009) and the SSA's decision (in October 2010) even if Ms. Nelson had asked it to or if Aetna thought it necessary.

Finally, Ms. Nelson's reliance on *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), is misplaced.  *Glenn* involved a claim administrator's disregard of an SSA decision awarding DIB to a claimant that was rendered prior to a decision on LTD benefits.  *See id.* at 109, 118.  The claim administrator had urged the claimant to argue before the SSA that she was disabled, recommended lawyers for the claimant to pursue her DIB claim, and financially benefitted through offsets against the plan payments.  *Id.* at 109, 118.  The Supreme Court concluded that those circumstances "suggested procedural unreasonableness," and viewed them as part of a combination of factors to be taken into account in assessing how a conflict of interest might have affected the benefits decision.  *Id.* at 118.  None of those circumstances are present here.  Most importantly, the SSA decision was not in existence at the time of Aetna's STD decision and was not issued until more than a

---

[2]      At its most generous, the governing regulation requires a decision on a claim within 90 days and a decision on an appeal within 60 days, each of which can be extended a maximum additional 90 days and 60 days, respectively, if the administrator determines there are special circumstances warranting extension.  *See* 29 C.F.R. § 2560.503-1(f)(1) and (i)(1)(i).

year later. *Glenn* says nothing about supplementing an ERISA administrative record with an SSA decision issued long after the claim administrator has denied a claim. And the fact that the SSA decision was not in existence at the time Aetna denied Ms. Nelson's claims nullifies her argument that the SSA's stricter standard (unable to work any jobs), which was noted in *Glenn*, might have any role to play in determining whether she could work her specific job, as required for STD benefits under the Plan. Hence, nothing in *Glenn* causes us to see how the district court erred in refusing to supplement the record with the SSA's decision.

## C. The merits of Aetna's decisions

On the merits, Ms. Nelson argues that we should afford less deference to Aetna's denial of her STD claim because of an inherent conflict of interest Aetna has as both the insurer of the LTD benefits policy and the claim administrator for STD and LTD benefits vested with discretion to determine eligibility. The district court concluded that Aetna did not have a conflict of interest as to the STD decision because it did not insure the STD portion of the Plan and there was no evidence suggesting an incentive to deny the claim. But as noted, LTD benefits are payable only if a claimant satisfies the elimination period, which turns on an initial finding of disability. Because Aetna's denial of STD benefits foreclosed Ms. Nelson from satisfying the elimination period and from obtaining LTD benefits that Aetna insured, we will assume that Aetna was "in a position to favor, consciously or unconsciously, its interests over the interests of [Ms. Nelson]," *Holcomb*, 578 F.3d at 1192 (internal

quotation marks omitted).  It that situation, we apply "a 'combination-of-factors method of review' that allows judges to 'take account of several different, often case-specific, factors, reaching a result by weighing all together.'"  *Id.* at 1193 (brackets omitted) (quoting *Glenn*, 554 U.S. at 117-18).  Under that method, a conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision." *Glenn*, 554 U.S. at 117.  But a conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy."  *Id.*

Applying this method of analysis, we give the conflict-of-interest factor limited weight because Aetna took steps to reduce any bias by hiring five independent specialists to review Ms. Nelson's STD claim.  *See Holcomb*, 578 F.3d at 1193 (affording limited weight to conflict where conflicted administrator hired two independent physicians, one to review medical records and one to examine claimant, rather than "rely solely on the evaluations and medical opinions of its own on-site physicians and nurses").  That none of those five specialists examined Ms. Nelson does not alter our view given the vast quantity of medical records they considered and the fact that one of the specialists spoke with Dr. Kelley.  *See Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1015 (10th Cir. 2004) (stating that independent medical examinations are "helpful" but "not required" when an administrator has a conflict of interest) (abrogated on other grounds by *Glenn*, as stated in *Holcomb*,

578 F.3d at 1192-93). Ms. Nelson has not offered any evidence to support her conclusory assertion that the specialists were not independent. Furthermore, she has not explained how any of those reports are flawed other than to claim that the specialists' conclusions about her ability to work differ from the opinions of two of her treating physicians (Drs. Kelley and Dilaveri). This argument sounds in the "treating physician" rule applicable in social security proceedings.[3] There is no similar requirement under ERISA. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (holding that ERISA "plan administrators are not obliged to accord special deference to the opinions of treating physicians").

Finally, this case is unlike *Pierce v. American Waterworks Co.*, 683 F. Supp. 996 (W.D. Pa. 1988), on which Ms. Nelson relies. In *Pierce*, the district court concluded that a denial of benefits was arbitrary and capricious where it rested entirely upon the opinion of an independent expert who had reviewed only a letter from the claimant's doctor and an award of social security disability benefits. *Id.* at 1000-01. The expert failed to set forth the factual basis for his opinion, and the opinion was unsupported by the materials he reviewed. *Id.* Here, Aetna based its decision on the opinions of five independent specialists who reviewed copious

---

[3] Under the treating physician rule, the SSA affords controlling weight to the medical opinions of treating sources provided they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Even where an opinion does not meet this standard, the SSA applies a series of factors to determine what weight it will afford a treating-source opinion. *See id.*

medical evidence and set forth the rationales for their conclusions.  And Ms. Nelson

has not shown that their conclusions were unsupported by the evidence they

reviewed.[4]

In sum, the administrative record shows that Aetna "diligently endeavored to

discover the nature of [Ms. Nelson's] ailments," *Holcomb*, 578 F.3d at 1193, and

Ms. Nelson has not demonstrated that the reports prepared by the five independent

specialists did not provide a reasonable basis for Aetna's denial of STD benefits

beyond April 20, 2009.  Because Aetna's denial of LTD benefits was based solely on

Ms. Nelson's failure to satisfy the elimination period, and Ms. Nelson has raised no

other challenge to that decision other than her unsuccessful attack on the denial of

STD benefits, she has also failed to show that the denial of LTD benefits was

arbitrary and capricious.

The judgment of the district court is affirmed.


Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[4]     Ms. Nelson also claims that Aetna should have consulted with potential
employers to determine whether any would hire her given her multiple impairments.
Besides citing no legal support for this proposed requirement, Ms. Nelson overlooks
that the relevant inquiry was whether she could perform her job with Bank of
America.  She also argues that Aetna's claim reviewers were incompetent to render a
decision given the complexity of her medical condition.  But this argument is
conclusory and therefore insufficient to merit appellate review.  *See Adler v.
Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately
briefed in the opening brief are waived.").