FILED
United States Court of Appeals
Tenth Circuit

December 5, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GERAL R. BROWN,

Plaintiff-Appellant,

v.

HARTFORD LIFE INSURANCE
COMPANY, a corporation,

Defendant-Appellee.

No. 07-7108
(D.C. No. 6:06-CV-00115-JHP)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

The Hartford Life Insurance Company (Hartford) terminated Geral R.

Brown's long term disability benefits. He sued Hartford under the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1132 (ERISA). The district

court upheld Hartford's termination of his benefits. He appeals. We reverse and

remand for further proceedings.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

FedEx Freight East, Inc. (FedEx) employed Mr. Brown as a truck driver. On March 3, 2003, while unloading a FedEx delivery truck, Mr. Brown fell off the truck bed and sustained serious injuries to his neck, back, left shoulder, left arm, left wrist, left hand, and left knee. His injuries included a fracture of the head of the radius in his left elbow, resulting in a surgery that replaced the radius head with a metal prosthesis. He subsequently developed reflex sympathetic dystrophy (regional pain syndrome) in the left arm and hand.[1]

At the time of Mr. Brown's injury, FedEx maintained an employee welfare benefit plan called the "FedEx Freight East, Inc., Group Benefit Plan" (Plan). Mr. Brown was a beneficiary of the Plan. The Plan included long-term disability insurance, which was underwritten by Hartford. All disability claims under the Plan were administered and determined by Hartford.

Mr. Brown submitted a claim for short term disability benefits (STD) to FedEx. He was approved and received STD for six months, at which time he became eligible for long term disability benefits (LTD) through the Plan.

---

[1] "[Reflex sympathetic dystrophy (RSD)] is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger" RSD. Social Security Ruling 03-2p, Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome, 2003 WL 22399117, at *1 (2003).

Hartford approved his claim and paid him LTD from September 1, 2003 through August 31, 2004.

Meanwhile, Hartford had instructed Mr. Brown to apply for Social Security disability benefits (SSD). On January 22, 2004, it wrote him a letter thanking him for providing a copy of his Notice of Award of SSD. It offset the monthly benefit he received from Social Security against the monthly LTD award.

The Plan entitles a participant to benefits if a disability prevents him from performing the duties of his specific job with FedEx for a period of up to twelve months after the elimination period. After the end of this twelve-month period, an employee may continue to receive disability benefits only if the disability prevents him from performing one or more of the essential duties of any occupation for which he is qualified by training, education, or experience. At the end of twelve months, Hartford reviewed Mr. Brown's claim and determined that he did not meet the "any occupation" standard. Accordingly, it terminated his benefits as of August 31, 2004.

Mr. Brown filed an administrative appeal with Hartford. He submitted additional medical and vocational evidence in support of his LTD claim. On September 12, 2005, Hartford issued a final decision denying the appeal. Mr. Brown then filed an action in federal district court for judicial review of Hartford's decision.

The district court determined, first, that the Plan did not give Hartford discretionary authority to determine eligibility for benefits. It therefore applied de novo review to the benefits denial. In the course of this de novo review, it concluded that (1) determinations of the Oklahoma Workers Compensation Court and the Social Security Administration finding Mr. Brown disabled were not relevant to its decision; (2) of those physicians and vocational experts who had examined Mr. Brown's suitability for employment, only Cheryl Mallon concluded that he could not perform "any occupation," and her report offered little reasoning for its conclusion; and (3) considering the evidence as a whole, Mr. Brown failed to show that he was incapable of performing the occupations identified by Hartford.

**ANALYSIS**

We review the district court's legal conclusions de novo and its factual findings under the clearly erroneous standard. *Deboard v. Sunshine Mining & Refining Co.*, 208 F.3d 1228, 1242 (10th Cir. 2000). The question of the appropriate standard to be used in judicially reviewing Hartford's actions as claim administrator is a legal one that we review de novo. *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (citation omitted).

The district court determined that Hartford's decision was subject to de novo review because the Plan did not give Hartford discretionary authority to determine eligibility for benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (stating ERISA trust principles require application of de novo review unless plan provides administrator with discretionary authority to determine eligibility). We disagree with this conclusion. The Plan provided Hartford with discretion to interpret its terms and provisions and to determine eligibility for benefits, as evidenced by this provision:

> **Who interprets policy terms and conditions?**
> We have full discretionary authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

Aplt. App. at 160.

Since the Plan gives Hartford discretionary authority, the district court should have applied an arbitrary and capricious standard to Hartford's decision to deny benefits. *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004). Its use of a de novo standard of review was thus legally erroneous.[2] Unless we can determine on de novo review that the denial of

---

[2]     In fairness to the district court's determination, the provision on which Hartford relied in arguing for discretionary authority in the district court differs

(continued...)

benefits was appropriate under the arbitrary and capricious standard, we must reverse and remand for further proceedings.

The arbitrary and capricious standard is a deferential one. *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008). Under this standard, "our review is limited to determining whether the plan administrator's interpretation was reasonable and made in good faith." *Fought*, 379 F.3d at 1003 (quotation and brackets omitted). It might seem, given this deference, that Mr. Brown faces an even more difficult hurdle in persuading a court that the administrator's decision should be reversed under the arbitrary and capricious standard than he had on de novo review. But in applying the arbitrary and capricious standard an additional factor comes into play: Hartford's conflict of interest. Because it applied de novo review, the district court did not expressly consider this factor.

Hartford was both the insurer and administrator of the Plan. The financial conflict of interest inherent in such a double role must be "weigh[ed] . . . as a factor in determining the lawfulness of the benefits denial." *Weber*, 541 F.3d at

[2](...continued)
from the provision on which it now relies in its argument on appeal. *Compare* Aplee. Supp. App., Vol. III, at 822 *with* Aplee. Br. at 24-25. Given our de novo review, however, together with the presence of the entire Plan document in the record and Mr. Brown's failure to object to the use of a different Plan provision, we have examined the provision on which Hartford now relies and have determined that it does grant Hartford discretion, requiring arbitrary and capricious review.

1011. The significance of this factor depends on the circumstances of the particular case. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).

The conflict of interest here may have significance. For example, Mr. Brown argued to the district court that Hartford improperly refused to consider the determinations of the Social Security Administration (SSA) and the Oklahoma Workers' Compensation Court (OWCC) that he was disabled when reaching its own determination that he was not. The district court did not consider whether Hartford's financial conflict could have had a role in influencing its decision to ignore the SSA and OWCC's determinations. Instead, it stated that the SSA and OWCC use different standards for determining entitlement to benefits and their determinations therefore could not be given "authoritative weight." Aplt. App. at 7, n.2. The district court did not further mention these determinations, apparently according them no weight at all.

While authority from this circuit generally supports the district court's approach, *see, e.g., Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1284 (10th Cir. 2002) (rejecting administrator's reliance on Social Security and workers' compensation determinations where disability standards differed from those in private policy), we find more pertinent the Supreme Court's recent, specific comments on this issue in *Glenn*:

> [T]he [Sixth Circuit Court of Appeals] found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the

benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work. This course of events was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the conflict (because MetLife's seemingly inconsistent positions were both financially advantageous).

*Glenn*, 128 S. Ct. at 2352 (citation omitted).

Hartford similarly benefitted financially from the SSA's determination that Mr. Brown was unable to do any work and should therefore receive SSD. But when Mr. Brown brought this determination to Hartford's attention, it merely stated:

> We also considered the fact that Mr. Brown was approved for Social Security Disability (SSD) benefits. The SSD decision is based on specific established rulings, and is not binding on The Hartford, as we must administer his claim based on our policy language and the medical documentation available to us.

Aplt. App. at 32.

Hartford's discussion of this point was conclusory: it provided no specific discussion of how the rationale for the SSA's decision, or the evidence the SSA considered, differed from its own policy criteria or the medical documentation it considered in rejecting Mr. Brown's claim. A reviewing court should have factored the inconsistency created by Hartford's instructing Mr. Brown to apply for SSD and reaping the benefits of his successful determination, then summarily rejecting the evidentiary value of that determination almost without comment,

into its determination of whether Hartford acted arbitrarily and capriciously in denying benefits. *See Glenn*, 128 S. Ct. at 2352.

In the course of our review, we have considered whether the district court's decision could be affirmed under the applicable standard of review notwithstanding its failure to consider evidence of Hartford's inherent conflict of interest and Hartford's summary rejection of the decisions of the SSA and the OWCC. We think the appropriate course is to remand this case for further consideration by the district court.

In addition to the factors suggesting a conflict of interest, the evidence presented to Hartford provides some support for Mr. Brown's disability claim. A vocational expert, Cheryl Mallon, concluded that "he is permanently and totally disabled from earning any wages in any employment for which he is, or could become physically suited, or reasonably fitted by education, training or experience." Aplt. App. at 102. The district court found Ms. Mallon's report unconvincing, noting that while it stated that Mr. Brown was unable to perform the jobs of truck driver and warehouse worker that fit his work profile, it "evidence[d] no other attempt to identify jobs that were suitable for [him]." *Id.* at 8. But this reasoning fails to engage with Ms. Mallon's conclusion that any gainful employment was *categorically excluded*. In her report, she stated:

> Dr. Pettingell, Mr. Brown's treating physician, has given permanent restrictions of no lifting over five pounds, and no repetitive use of the left upper extremity. These restrictions would severely limit any

vocational options for retraining. Even sedentary work requires good bilateral manual dexterity and lifting up to ten pounds occasionally. Additionally, Mr. Brown continues to experience severe chronic pain due to the reflex sympathetic dystrophy.

*Id.* at 102.

The record also contains an opinion from Dr. Richard Hastings, who concluded that a "psychological overlay and clinical depression" were "becoming a substantial clinical debility for the patient" and recommended further evaluation of these factors. *Id.* at 87. The district court did not discuss these findings.

The district court did rely on a vocational evaluation authored by Rhonda Blackstock. Ms. Blackstock concluded that Mr. Brown could perform work at the "sedentary" and "limited light" exertional levels, so long as he was not required to lift over five pounds or do repetitive work with his left arm. Her evaluation, however, did not assign any limitation due to severe chronic pain, psychological overlay, or clinical depression, factors noted by other examiners.

The district court also relied on an Employability Analysis Report completed by a Hartford employee. This report used a computer-generated profile to match Mr. Brown with a number of jobs that accounted for his exertional limitations, but assigned no limitation based on either chronic pain or psychological factors.

Given the state of the evidence, we cannot say as a matter of law that the district court's decision should be affirmed despite the application of an incorrect

standard of review. Nor can we conclude that Hartford's decision to deny benefits was arbitrary and capricious without further consideration and possible further fact-finding by the district court. Accordingly, on remand, the district court should re-examine all the evidence in light of the applicable standard of review. In so doing, it should be careful to appropriately weigh (1) Hartford's inherent conflict of interest; (2) Hartford's summary rejection of the decisions of the SSA and the OWCC finding Mr. Brown disabled, considering the differing standards applied by the governmental agencies but also considering any financial benefit Hartford derived from those determinations; and (3) the opinions of Cheryl Mallon and Dr. Hastings and Hartford's reasons for rejecting those opinions. Finally, the district court should give consideration to whether Hartford appropriately addressed any non-exertional impairments identified in the record.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings in accordance with this order and judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge

-11-