FILED
United States Court of Appeals
Tenth Circuit

June 28, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

GERAL R. BROWN,

Plaintiff-Appellant,

v.

HARTFORD LIFE INSURANCE CO.,

Defendant-Appellee.

No. 10-7081
(D.C. No. 6:06-CV-00115-JHP)
(E.D. Okla.)

ORDER AND JUDGMENT[*]

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, **BRORBY**, Senior
Circuit Judge.

Geral R. Brown appeals the district court's order granting summary

judgment to Hartford Life Insurance Co. (Hartford) on his challenge to the

termination of his long-term disability benefits. He sued Hartford under the

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 (ERISA).

In a prior appeal, this court remanded for the district court to re-examine the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

evidence in light of the arbitrary and capricious standard of review. *Brown v. Hartford Life Ins. Co.*, 301 F. App'x 772, 777 (10th Cir. 2008) (*Brown I*). We now exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## Background

The underlying facts are set forth in *Brown I*, 301 F. App'x at 773-74. Briefly, Mr. Brown was employed by FedEx Freight East, Inc. (FedEx). He sustained serious injuries while unloading a FedEx delivery truck on March 3, 2003. Mr. Brown was covered by FedEx's employee welfare benefit plan, the "FedEx Freight East, Inc., Group Benefit Plan" (Plan). Mr. Brown received short-term disability benefits for six months, and long-term disability benefits for the twelve months from September 1, 2003 through August 31, 2004. After the end of that twelve-month period, the Plan provided that an employee "may continue to receive disability benefits only if the disability prevents him from performing one or more of the essential duties of any occupation for which he is qualified by training, education, or experience." *Id.* at 774. Hartford determined that Mr. Brown did not meet the "any occupation" standard as of August 31, 2004, and terminated his benefits.

Following his injury, Mr. Brown filed for social security disability benefits, as required by the Plan, and the Social Security Administration (SSA) awarded him benefits. The Plan then offset the monthly benefit it paid to Mr. Brown by the amount of the social security benefit. Mr. Brown also applied for benefits to

the Oklahoma Worker's Compensation Court (OWCC), which also determined that he was disabled.

Hartford denied Mr. Brown's administrative appeal and he sought judicial review. Following the remand in *Brown I*, the district court first denied Mr. Brown's motion to supplement the administrative record. The court then granted summary judgment in favor of Hartford after examining and weighing the evidence and applying the arbitrary and capricious standard of review. The court upheld Hartford's decision to deny benefits because Mr. Brown did not meet the Plan's requirement that he be unable to perform "any occupation."

**Standards of Review**

"We review a plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling." *Holcomb v. Unum Life Ins. Co.*, 578 F.3d 1187, 1192 (10th Cir. 2009). The Plan gives Hartford discretionary authority to interpret its terms and provisions and to determine eligibility for benefits. *Brown I*, 301 F. App'x at 775. Therefore, we apply an arbitrary and capricious standard of review, under which "we will uphold an administrator's decision so long as it is predicated on a reasoned basis." *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (internal quotation marks omitted), *cert. denied*, 130 S. Ct. 3356 (2010). The arbitrary and capricious standard is a deferential one. *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008). An arbitrary and capricious denial of

benefits may be indicated by a "lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Graham*, 589 F.3d at 1357-58 (internal quotation marks omitted). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance." *Id.* at 1358 (internal quotation marks omitted). "Our review is limited to the administrative record–the materials compiled by the administrator in the course of making his decision." *Holcomb*, 578 F.3d at 1192 (internal quotation marks omitted).

## Discussion

### A. Motion to Supplement the Administrative Record

We first consider Mr. Brown's contention that the district court erred in denying his motion to supplement the administrative record with documents filed in the social security proceedings. The district court observed that the Plan administrator had not relied on the documents in question.

"[W]e have frequently, consistently, and unequivocally reiterated that, in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) (internal quotation marks omitted). Following the Plan administrator's initial decision to deny him long-term disability benefits, Mr. Brown filed an

administrative appeal and supplemented the record at that time. *See* Aplt. App. at 67. And in the remanded proceedings, the district court permitted further discovery on issues relating to Hartford's conflict of interest. *See Murphy*, 619 F.3d at 1162 (holding that although district courts are prohibited from considering extra-record materials related to a claimant's eligibility for benefits, they may consider "extra-record materials related to an administrator's dual role conflict of interest"). Consequently, the district court correctly denied Mr. Brown's motion to supplement the administrative record with materials pertaining to his eligibility for benefits.

## B. Conflict of Interest

Mr. Brown argues that the Plan administrator's decision to deny him long-term disability benefits should be overturned because (1) the Plan required him to apply for social security disability benefits and it benefitted financially from the SSA's finding that he was disabled, yet it ignored the SSA's finding of disability by concluding that he was not precluded from performing "any occupation;" (2) the Plan operated under a dual-role financial conflict of interest as demonstrated by (a) its failure to consider the SSA's award of disability benefits; (b) its failure to obtain records submitted to the SSA; (c) its failure to consider the OWCC's January 24, 2005, finding that he was temporarily totally disabled; (d) its reliance on its consulting physician's opinion; and (e) its failure to adopt the favorable opinions of Dr. Hastings and Ms. Mallon, a vocational

rehabilitation consultant; and (3) a fair review of the medical evidence established his total disability, which qualified under the Plan's "any occupation" criteria. Although the district court did not correctly describe the Plan administrator's treatment of the SSA and OWCC disability determinations, we conclude that this factor alone does not require reversal based on Hartford's conflict of interest, when considered with other factors.

Hartford was both the insurer and administrator of the Plan and thus acted under a dual-role conflict of interest. A conflict of interest is one of several factors courts must take into account when reviewing the lawfulness of benefit denials. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). In *Glenn*, the Court considered the insurer's dual-role conflict of interest as one of a combination of factors, stating that the lower court was justified in giving more weight to the conflict where the insurer "had encouraged [claimant] to argue to the [SSA] that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that [claimant] could in fact do sedentary work." *Id.* at 118.

Here, the district court recognized Hartford's financial gain from Mr. Brown's receipt of social security disability benefits, but erred in stating that the conflict was "minimal" because Hartford "simply suggest[ed] he apply for benefits." Aplt. App. at 9. On the contrary, the Plan *required* Mr. Brown to

apply for those benefits. *Id.* at 194; *see also Brown I*, 301 F. App'x at 774 ("Hartford had *instructed* Mr. Brown to apply for Social Security disability benefits" (emphasis added)). Moreover, the district court held that the standards were different for determining eligibility for benefits under the Plan and under the SSA and OWCC. But the district court, like the Plan administrator, offered no explanation of the different standards or why the Plan administrator was not obliged to consider the SSA's disability finding.

Nevertheless, pursuant to the Supreme Court's "combination-of-factors method of review," *Glenn*, 554 U.S. at 118, we conclude that the Plan administrator's failure to distinguish or discuss the SSA's and OWCC's findings of disability does not weigh heavily against Hartford. The district court found that Hartford had taken steps to reduce potential bias and to minimize any conflict of interest "by separating the initial claims handler from the appeals specialist, paying a fixed salary to its decision makers without incentives for denying claims, and separating the financial department from the claims department such that the claims handlers do not interact with the underwriters or financial department in the handling of a claim." Aplt. App. at 8. Mr. Brown does not challenge these findings. These factors weigh in Hartford's favor.

Mr. Brown also claims as evidence of Hartford's conflict of interest the Plan administrator's treatment of the medical evidence. He contends that the favorable opinions of Dr. Hastings and Ms. Mallon, the vocational rehabilitation

consultant, should have prevailed over those of Dr. Siegel, the consulting physician, and other physicians. The Plan administrator considered Dr. Hastings' opinion, as well as the opinions of Drs. Pardee, Moorad, Shaw, Pettingell, and Siegel, and noted that the opinions were not entirely consistent with one another.

Dr. Hastings examined Mr. Brown on one occasion in June 2004. He noted Mr. Brown's injuries to the left arm and opined that he had likely sustained more extensive injuries. He recommended that Mr. Brown undergo orthopedic and psychiatric evaluations.

Dr. Shaw conducted a psychological evaluation in March 2005, but was unable to state whether Mr. Brown suffered from an "injury related psychological overlay" due to his failure "to respond in an open and honest manner on pain ratings, cognitive tasks, and endorsement of psychological symptoms." Aplee. Supp. App., Vol. I at 237. The Plan administrator noted that Mr. Brown did not submit any documentation indicating that he had sought psychological or psychiatric care, other than the evaluation by Dr. Shaw.

In October 2004, Dr. Pardee examined Mr. Brown, concluding that there was "no contraindication to Mr. Brown returning to the workforce, at any time." *Id.* at 245. He opined that the injury was limited to the left arm and elbow and found "no evidence of impairment for psychological overlay." *Id.* at 244.

Dr. Moorad performed an orthopedic evaluation in March 2005, and stated that Mr. Brown had "increasing pain and symptomatology" so was in need of

nerve blocks, which were helpful. Aplt. App. at 133. Dr. Moorad suggested that Mr. Brown's pain medications be changed to non-narcotic medications and that he undergo further testing, after which he could be assessed for retraining. *Id.* The record does not reflect that Dr. Moorad conducted additional testing and no further report from Dr. Moorad was submitted to the Plan administrator, *id.* at 71.

The latest report by Dr. Pettingell, Mr. Brown's treating physician, was dated August 4, 2005. *Id.* at 82-83. As with previous reports, Dr. Pettingell noted that Mr. Brown's condition remained essentially unchanged. Mr. Brown was to continue on current medications and to continue with a home exercise program. Mr. Brown has identified no statement by Dr. Pettingell indicating that he is unable to work, and we have found none.

The Plan administrator also relied on the report by consulting physician Dr. Siegel that noted Mr. Brown's limitations and capabilities and concluded that he could "perform mostly one-handed work." *Id.* at 168. Mr. Brown argues that Dr. Siegel's opinion should be given no weight because he did not examine Mr. Brown, he was employed by Hartford, and his opinion differed from those of Mr. Brown's treating physician.[1] Those conclusory claims, unsupported by record

---

[1] Mr. Brown also complains that Hartford never offered him vocational rehabilitation or job training, despite Dr. Siegel's suggestion that it would be useful. This argument is irrelevant to the question of whether the medical evidence supported the Plan administrator's determination that Mr. Brown was not entitled to long-term benefits.

evidence or legal authority, are not persuasive. As the Plan administrator discussed, Dr. Siegel reviewed the extensive medical reports submitted by other physicians and conferred with Dr. Pettingell. Moreover, Dr. Siegel's opinion is closely linked to the medical evidence. Therefore, the Plan administrator appropriately considered Dr. Siegel's opinion.

Mr. Brown also asserts that Hartford unfairly kept crucial documents from Dr. Siegel, thus demonstrating its bias. *Cf. Glenn*, 554 U.S. at 110 (listing as a factor indicating a conflict of interest the insurer's "failure to provide all of the treating physician reports to its own hired experts"). The documents Mr. Brown claims were not shown to Dr. Siegel are the reports by the vocational counselors. But those reports were derived from the limitations given by Dr. Pettingell, with whom Dr. Siegel discussed Mr. Brown's condition. And those reports were not medical reports. Therefore, this argument does not demonstrate bias.

As to Ms. Mallon's opinion, the Plan administrator compared it to two other vocational evaluations, and discounted it because it afforded greater weight to Mr. Brown's subjective view that he was unable to work and did not describe "any method utilized to attempt to identify or rule out occupations that may be performed within his vocational and medical qualifications." Aplt. App. at 73. Based on our review of the medical evidence, we conclude that the Plan administrator's treatment of Ms. Mallon's opinion was reasonable. We further reject Mr. Brown's bias challenge to a vocational assessment submitted by

-10-

Ms. Fant due to her status as a Hartford employee. As indicated in her report, she used a computer program to identify jobs Mr. Brown could do based on the limitations stated by Dr. Pettingell. Mr. Brown has made no challenge to Ms. Fant's methodology.

Finally, we address Mr. Brown's argument that the Plan administrator disregarded the medical evidence of Mr. Brown's severe chronic pain, his reflex sympathetic dystrophy (regional pain syndrome), and his dependence on and regular use of narcotic medications for pain control. He asserts that the Plan administrator's failure to account for the effect of his pain and narcotic use on his employability requires a remand. It is undisputed that Mr. Brown had chronic pain and took narcotic medications to control the pain. But the record does not support an inference that either the pain or the medications adversely affected his ability to work. According to Dr. Pettingell's reports, medications provided Mr. Brown "complete relief" from pain, Aplt. App. at 93, and Mr. Brown "tolerate[d] current medications without significant side effects," *id.* at 87. Mr. Brown points to no evidence in the record to support his claim that his pain or medications affected his ability to work.

As the above discussion demonstrates, there is substantial evidence to sustain the Plan administrator's determination. Therefore, we must reject Mr. Brown's request for a remand and an award of benefits.

## Conclusion

We conclude that the circumstances under which Mr. Brown's long-term disability benefits were terminated do not suggest a "likelihood that [Hartford's dual-role inherent conflict of interest] affected the benefits decision." *Glenn*, 554 U.S. at 117. Rather, the conflict is made less important by Hartford's "active steps to reduce potential bias and to promote accuracy." *Id.* Further, the Plan administrator's decision is supported by substantial evidence. Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge