**Karen MARTIN, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Civil Action No. 3:12–CV–00923–G–BK.**

United States District Court,
N.D. Texas,
Dallas Division.

April 4, 2013.

Mary L. Scott, Farrow–Gillespie & Heath LLP, Dallas, TX, Melton Benton Myers, Law Office of Melton B. Myers, Irving, TX, for Plaintiff.

Robert D. Allen, Law Offices of Robert D. Allen, PLLC, Abel Leal, Meckler Bulger Tilson Marick & Pearson LLP, Dallas, TX, Paul R. Garry, Meckler Bulger Tilson Marick & Pearson LLP, Scottsdale, AZ, for Defendant.

### ORDER

RENÉE HARRIS TOLIVER, United States Magistrate Judge.

Pursuant to the District Court's *Standing Order of Reference* filed February 20, 2013 (Doc. 28), Defendant's *Motion for Protective Order* (Doc. 21), Plaintiff's *Motion to Compel* (Doc. 26), and Plaintiff's *Motion for Leave to File Supplemental Appendix to Reply Brief* (Doc. 33) have been referred to this Court for determination. For the reasons set forth herein, Defendant's *Motion for Protective Order* (Doc. 21) and Plaintiff's *Motion to Compel* (Doc. 26) are **GRANTED IN PART.** Plaintiff's *Motion for Leave to File Supplemental Appendix to Reply Brief* (Doc. 33) is **GRANTED.**

### I. BACKGROUND

In this employment discrimination case, Plaintiff alleges that Defendant violated the Texas Labor Code when it fired her due to her age. (Doc. 1–5 at 5–6). Plaintiff claims that she worked for Defendant in its South Texas Property Market Claim Office ("MCO") as an outside claims adjuster, and her supervisor told her she was being terminated due to several unacceptable responses to customer satisfaction surveys (known as "ERI surveys"). *Id.* at 2–4. In response to Plaintiff's propounded discovery and corporate representative deposition notice, Defen-

dant now moves for a protective order. (Doc. 21). Plaintiff has responded to Defendant's motion and cross-moved to compel. (Doc. 26).

### II. APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) provides that, unless the court orders otherwise, the parties may obtain discovery regarding any relevant, nonprivileged matter. A party may move to compel a discovery response under Federal Rule of Civil Procedure 37(a)(3), and, for good cause, the court can order discovery of any matter relevant to the subject matter of the action as long as the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence. FED.R.CIV.P. 26(b)(1). Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

### III. DISCOVERY SOUGHT AND ANALYSIS

A. *Federal Rule of Civil Procedure Corporate Representative 30(b)(6) Deposition*

1. **"Non–Merits" Based Discovery**

■ Plaintiff's proposed Rule 30(b)(6) deposition Topics 2–7 include (1) Defendant's document retention policies; (2) Defendant's efforts in responding to Plaintiff's discovery; (3) Defendant's computer systems; (4) the date by which Defendant anticipated that Plaintiff would sue; and (5) Defendant's efforts, including any instructions to employees, to preserve documents and electronic information relevant to the anticipated suit. (Doc. 23–1 at 3).

Defendant seeks a protective order as to these Topics on the basis that they seek non–merits based discovery concerning Defendant's document preservation and production policies, which is burdensome, irrelevant and harassing because there is no evidence to suggest that it has lost or destroyed any documents in this case. (Doc. 22 at 21–22).

Plaintiff responds that the discovery sought is relevant because Defendant failed to timely and fully produce key documents in response to Plaintiff's first Request for Production. (Doc. 27 at 19–20). As to Topic 4, which seeks testimony about Defendant's email systems, databases, applications, and computer networks, Plaintiff argues that the discovery is relevant because Defendant refuses to identify its computer systems so that Plaintiff can make a decision about its proposal to use search terms to locate responsive discovery. *Id.* at 20. In relation to Topic 5, which seeks testimony about when Defendant anticipated Plaintiff would file suit, Plaintiff contends she needs to establish when Defendant should have begun preserving documents relevant to her claim, as Defendant has not produced many documents that it should have. *Id.* at 21.

Defendant replies that it was not until more than four months after it responded to Plaintiff's first Request for Production that she notified Defendant she had problems with the responses. (Doc. 32 at 7). Defendant maintains that it supplemented its document production after Plaintiff clarified her discovery requests and sent her second Request for Production. *Id.* at 7–8.

Upon consideration of the parties' arguments, the Court agrees with Defendant that deposition Topics 2–7 are overbroad and irrelevant. While Plaintiff speculates that Defendant may have additional documentation that it has not produced, there is no evidence to support that supposition at this point. Defendant's explanation for the manner in which it has produced documents, based on Plaintiff's staggered discovery requests and clarifications, is plausible. Moreover, defense counsel are surely aware that they are under an ongoing obligation to supplement their discovery responses if additional responsive information is located. FED. R.CIV.P. 26(e)(1). As to Topic 4, which seeks testimony about Defendant's computer systems, if Defendant refuses to supply the necessary information, Plaintiff is under no obli-

gation to accept Defendant's request to use search terms to locate responsive discovery. Defendant will simply be obligated to manually search for the requested documents.

## 2. Overbreadth and Relevance Objections to Topics 1, 8, 9, 12–22, 24, 25 and 27[1]

Plaintiff's proposed deposition Topics in this section include (1) Defendant's Texas Claims Service Area's ("Texas CSA") structure and management (Topic 1); (2) Plaintiff's job history, performance and qualifications from January 2007 to present (Topic 8); (3) any awards or commendations Defendant gave to Plaintiff (Topic 9); (4) the qualifications of an adjuster and the customer-service related performance of adjusters in the Texas CSA (Topics 12 and 13); (5) any discipline of adjusters in the Texas CSA due to ERI survey scores or for failure to meet Defendant's standards (Topic 14 and 15); (6) any complaints of age discrimination in the Texas CSA (Topic 16); (7) Defendant's ERI survey as compared to other customer satisfaction surveys and the ERI survey's use companywide and in the Texas CSA, especially to discipline or fire employees (Topics 17–20); (8) the "unacceptable performance notification" ("UPN") process in the Texas CSA and Defendant's headquarters as related to ERI or ICSS customer satisfaction surveys (Topic 21); (9) Defendant's policies and procedures relating to employee performance, discrimination claims, and terminations (Topic 22); (10) the person who replaced Plaintiff (Topic 24); (11) the process for making claim assignments in the South Texas Property MCO (Topic 25); and (12) other customer satisfaction surveys Defendant was using concurrently with the ERI survey, including the CRI and ICSS surveys, and the reports relating thereto (Topic 27). (Doc. 23–1 at 4–5; Doc. 26 at 2–5).[2]

Defendant seeks a protective order from Plaintiff's Rule 30(b)(6) deposition notice as to these Topics, arguing that they are overbroad and irrelevant. (Doc. 22 at 13). De-

---

1. Plaintiff withdrew Topic 26. (Doc. 26 at 4).

2. In her response to Defendant's *Motion for Protective Order/Motion to Compel,* Plaintiff revised several of the deposition Topics. (Doc. 26 at 2–

5). Thus, any revised wording is deemed to supersede the original wording of Plaintiff's Topics.

fendant first argues that Plaintiff is seeking discovery relating to its Texas CSA, which encompasses several offices throughout Texas that handle numerous types of claims, such as automobile and liability, in addition to real property claims. *Id.* Defendant asserts that its South Texas Property MCO is the only office that employs outside property claims adjusters to handle real property homeowner damage claims, which was the position Plaintiff held. *Id.* Accordingly, Defendant argues that Plaintiff's deposition Topics should be limited to matters involving the ERI performance of outside property claims adjusters within the South Texas Property MCO because Plaintiff's performance was measured against those adjusters' performances. *Id.* Defendant also contends that Plaintiff is not entitled to discovery regarding other types of customer satisfaction surveys it conducts because Plaintiff was fired only for her unacceptable ERI surveys. *Id.* at 17.

Plaintiff responds that her termination emanated from the top manager of the Texas CSA, Lori Desch, and, therefore, the relevant comparator group includes all outside adjustors who were subject to the ERI survey. (Doc. 27 at 15–16). Further, Plaintiff asserts that Defendant's other customer satisfaction surveys are relevant to show that Defendant's stated motive for firing her is untrue. *Id.* at 17.

Nevertheless, Defendant maintains that Plaintiff's comparator group should be limited to outside property adjustors in the South Texas Property MCO because Plaintiff had a different direct supervisor and skill set, as well as different training and responsibilities, than Defendant's automobile adjusters. (Doc. 32 at 9–13). Plaintiff replies that this argument overlooks the fact that the only performance measure for which she was terminated was shared by all of Defendant's adjusters. (Doc. 36 at 2–3).

### a. Discovery Regarding Comparators in Texas CSA v. South Texas Property MCO

▆▆▆ A court may order production of personnel files of a discrimination plaintiff's comparators if the information contained therein may be relevant to show that a defendant's reasons for terminating a plaintiff were pretextual. *Jepsen v. Florida Bd. of Regents,* 610 F.2d 1379, 1384–85 (5th Cir. 1980).[3] Employees with different supervisors, who work for different divisions of a company, or who have different work responsibilities generally are not considered similarly-situated comparators. *Lee v. Kansas City So. Rwy. Co.,* 574 F.3d 253, 259–60 (5th Cir.2009). A plaintiff who proffers a fellow employee as a comparator must demonstrate that the complained-of employment actions were taken "under nearly identical circumstances" as those faced by the comparator who was treated differently. *Id.* at 260. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (footnotes omitted). "[I]t is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." *Id.* at 260–61. In *Lee,* the plaintiff established that a fellow engineer was a suitable comparator because the decision whether to rehire them was determined by the same ultimate decisionmaker and they had committed similar infractions. *Id.* at 261–62.

In *Turner v. Kansas City So. Rwy. Co.,* the Court of Appeals for the Fifth Circuit noted that a railroad conductor and engineer also were comparators because, among other things, their job responsibilities were not materially different, and it appeared that their employment status was determined by the same person. 675 F.3d 887, 896 (5th Cir. 2012) (quoting from defendant's rule book, which provided: "[T]he conductor and the engineer are responsible for the safety and protection of their train [and] observance of

---

**3.** Although Plaintiff's suit is for violation of the Texas Labor Code, analogous federal statutes and the cases that interpret them guide the reading of the Code's anti-discrimination provisions. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001).

the rules.... [I]f any doubts arise concerning the authority for proceeding or safety, the conductor must consult with the engineer who will be equally responsible for the safety and proper handling of the train."); *cf. Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir.2011) (finding three persons not to be comparators because two of them reported to, and had different job responsibilities than, the plaintiff; the third proposed comparator had the same title and reported indirectly to the same supervisor as the plaintiff, but had not committed any similar infractions).

On the other hand, in *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978), the appellate court held that the district court did not err in disallowing discovery where the plaintiff sought information regarding some 7,500 employees across 32 districts and three manufacturing plants. The circuit court explained that when investigating an individual discrimination complaint, the usual focus is upon the plaintiff's "employing unit or work unit." *Id.* (citing *EEOC v. Packard Electric Division, General Motors Corp.*, 569 F.2d 315 (5th Cir.1978)).

■ Upon consideration of the parties' arguments and the case law, the Court concludes that Plaintiff is entitled to discovery as to the Texas CSA. Although Plaintiff's exact job responsibilities differed to a degree from the automobile claims adjusters' responsibilities, the core aspects of the job are the same. *Cf.* Doc. 36 at 10 and 12 (Defendant's brief stating that both real property and auto adjusters must know how to inspect the subject property, understand the construction of the property and how to detect and estimate damage thereto, prepare estimates, understand repair techniques, and work with the third parties who are conducting the repairs). Moreover, all of the insurance adjusters in the Texas CSA are subject to receiving ERI surveys, and the lead decisionmaker in charge of the Texas CSA is the same person, Lori Desch. Thus, the adjusters throughout the Texas CSA have essentially the same job responsibilities and work for the same supervisor, which is sufficient to

render them comparators at the discovery stage. *See Lee*, 574 F.3d at 260.

### b. Discovery Regarding Defendant's Other Customer Satisfaction Surveys

■ Defendant argues that many of Plaintiff's deposition Topics seek discovery that touches on matters outside its ERI surveys, but Plaintiff was terminated due to her unacceptable ERI scores, so she is not entitled to discovery into other types of customer surveys that contained "irrelevant" performance measures. (Doc. 22 at 14–17; Doc. 32 at 13–14).

Plaintiff has filed a *Motion for Leave to File a Supplemental Index to Reply Brief* in which she requests permission to append an ICSS customer service survey to show its similarity to the ERI surveys. (Doc. 33 at 1–2). In her proposed deposition Topic 27, Plaintiff identifies another customer service survey as a "CRI." (Doc. 23–1 at 5). Upon consideration, Plaintiff's *Motion for Leave to File a Supplemental Index* is **GRANTED**. The Court agrees with Plaintiff's contention that other customer service surveys that Defendant conducts may reveal whether Defendant treated similarly situated comparators who received negative customer service ratings the same as they treated Plaintiff. (Doc. 33 at 1; *cf.* Doc. 26–1 at 14–15 and Doc. 33–1 at 4–5). Contrasting the results of Plaintiff's customer satisfaction surveys with her comparators' results would obviously bear on Plaintiff's ability to prove her *prima facie* case of discrimination. *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir.2001) (setting forth the elements of an age discrimination disparate treatment claim, including the showing that others similarly situated were treated more favorably).

### c. Rulings as to Individual Deposition Topics[4]

Upon consideration of the case law, the Court's rulings on the above subjects, and the parties' arguments, the undersigned **DENIES** Defendant's *Motion for a Protective Order* and **GRANTS** Plaintiff's *Motion to Compel* as to deposition Topics 1, 8, 14 (as

**4.** The Court's rulings incorporate Plaintiff's revisions to her deposition Topics. (Doc. 26 at 2–5).

limited to outside claims adjusters, as opposed to "employees"), 16–22, 24–25, and 27.[5] As to Topic 9, the Court **DENIES** Defendant's *Motion for a Protective Order* and **GRANTS** Plaintiff's *Motion to Compel* to the extent that Defendant must designate a corporate representative who is prepared to discuss any *formal* awards or *written* commendations that Defendant gave to Plaintiff from January 1, 2009 to the time of her termination. This bears on Plaintiff's ability to prove pretext. *Moss v. BMC Software, Inc.,* 610 F.3d 917, 922 (5th Cir.2010) (stating that a plaintiff may show pretext through either evidence of disparate treatment or by showing that the employer's proffered explanation for the adverse employment action is false or "unworthy of credence.").

As to Topic 12, the Court **GRANTS** Defendant's *Motion for a Protective Order* and **DENIES** Plaintiff's *Motion to Compel,* as it is undisputed that Plaintiff was qualified for her position. As to Topic 13, the Court **DENIES** Defendant's *Motion for a Protective Order* and **GRANTS** Plaintiff's *Motion to Compel* to the extent that Defendant must designate a corporate representative who is prepared to discuss the coaching, discipline, termination, or mandatory retirement of other outside adjusters in the Texas CSA based on those adjusters' ERI scores. As to Topic 15, the Court **GRANTS** Defendant's *Motion for a Protective Order* and **DENIES** Plaintiff's *Motion to Compel,* as the Topic is overbroad.

### 3. Objections Based on Time Period

■ Defendant next seeks a protective order from Plaintiff's corporate deposition notice as to proposed Topics 1, 8, 9, 10, 12–19, 21, 22, 25, and 27 on the basis that the Topics are not limited to the relevant time period. (Doc. 22 at 21). Defendant asserts that the timeframe should span from January 1, 2009, approximately two years before Plaintiff was terminated, to December 31, 2011, eight months after her firing. *Id.*

Plaintiff asserts that discovery of information relevant to the ERI surveys dating back to January 2008 is relevant because that is when Defendant began using the survey, and she needs to discover the origins of the survey, Defendant's motivation for instituting the survey, and when and why it began using the surveys to terminate employees. (Doc. 27 at 13–14).

■ Plaintiff's complaint alleged that "in the year or two before [she] was fired" in April 2011, Defendant began a campaign to rid itself of its older employees." (Doc. 1–5 at 2–4). This allegation supports Defendant's position that discovery should be limited to two years prior to Plaintiff's termination. Further, while the scope of discovery is broad, Plaintiff's request for information about the origins of the survey appears to be a fishing expedition. Rule 26(b)(2) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Group Ins.,* 619 F.3d 1151, 1163 (5th Cir.2010); *see also Crawford–El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly."). Accordingly, the Court agrees with Defendant that deposition Topics 1, 8, 9, 10, 12–19, 21, 22, 25, and 27 must be limited in time to the period from January 1, 2009 to December 31, 2011.

### 4. Objection to Topic 23 Based on Relevance

■ In proposed deposition Topic 23, Plaintiff seeks to question Defendant's corporate representative about Peggy West–Coat's knowledge of Plaintiff's imminent termination prior to the termination taking place. (Doc. 23–1 at 5). Defendant asserts that West–Coat is an employee in the South Texas Property MCO, and her knowledge of Plaintiff's termination is not relevant, but if Plaintiff believes it is, she can depose West–Coat. Plaintiff replies that she first learned of her termination from West–Coat, and management must have leaked the information. (Doc. 27 at 25). She argues that who-

---

**5.** In Topics 17–19 and 24, where Plaintiff included the phrase "including, but not limited to," the language purporting to delimit the scope of in-

quiry shall be deemed excised because it is overbroad as Defendant argues. (Doc. 22 at 18).

ever leaked the information may know Defendant's true motivation for firing her. *Id.* at 26. Upon consideration of the arguments, the undersigned agrees with Defendant's position that Plaintiff can depose West–Coat if she wants to inquire further into this matter. A corporate representative deposition is not the proper forum for those questions.

### 5. Location of the Corporate Deposition

Plaintiff contends that Defendant has objected to producing its corporate representative for deposition in Dallas and is instead demanding that the deposition take place in Defendant's principal place of business, Northbrook, Illinois. (Doc. 27 at 7–9). Plaintiff asserts that Dallas is the more appropriate forum considering that (1) both parties' lead attorneys are located in Dallas; (2) Defendant's sole corporate representative, Wayne Vaclavik, is located in Houston, and he regularly travels to Dallas for work; (3) significant discovery disputes over the scope of the deposition are likely to arise, requiring resolution by this Court; (4) Plaintiff cannot afford to travel since she lost her job; and (5) Defendant is a major company that can expect to be sued by its employees in locations where it maintains offices, such as Dallas. *Id.*

Defendant responds that Plaintiff has not offered a compelling reason for the Court to deviate from the typical rule that a corporation's deposition should take place in the city where its principal place of business is located. (Doc. 32 at 18). Defendant nevertheless agrees to produce Vaclavik for his deposition in Dallas, but states that given the breadth of Plaintiff's proposed deposition topics, it must designate as a second witness Eric Kiehn who works in Illinois. *Id.* at 19. Defendant requests that Kiehn's deposition take place in Illinois so that Kiehn does not have to miss work. *Id.*

This Court has broad discretion to determine the appropriate place for a Rule 30(b)(6) deposition. *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.,* 147 F.R.D. 125, 127 (N.D.Tex.1992). The deposition of a corporation through its agents or officers is normally taken at the corporation's principal place of business. *Id.* A number of factors may overcome that presumption and persuade the court to permit the deposition elsewhere if: (1) counsel for both parties are located in the forum district; (2) the plaintiff seeks to depose only one corporate representative; (3) the defendant chooses a corporate representative who does not reside in the location of the principal place of business; (4) significant discovery disputes are likely to arise, which may require resolution by the forum court; and (5) the nature of the claim and the parties' relationship are such that "an appropriate adjustment of the equities favors a deposition site in the forum district." *Id.*

Given that Defendant has agreed to produce Vaclavik for a deposition in Dallas, that portion of Plaintiff's *Motion to Compel* is **DENIED AS MOOT.** As to the deposition of Kiehn, the Court finds that the majority of the *Resolution Trust* factors weighs in Plaintiff's favor. Counsel for both parties are in Dallas, there have been significant discovery disputes in this case and more may arise during the corporate representative deposition, and the equities favor the deposition taking place in Dallas due to the burden travel would place on Plaintiff's finances, while any inconvenience to Defendant would be *de minimus. Id.* Accordingly, as to deponent Kiehn, Plaintiff's *Motion to Compel* is **GRANTED.** Defendant is **DIRECTED** to produce Vaclavik and Kiehn for deposition within 40 days of the date of this order.

### B. Plaintiff's Second Request for Production of Documents

In Plaintiff's Second Request for Production ("RFP") she seeks (1) organizational charts and documents showing Defendant's structure since January 2008, including the structure of the Texas CSA and all Texas MCOs (RFP 1); (2) Defendant's document retention policies (RFP 2); (3) performance-related documents for all Texas CSA employees who were placed on UPN or otherwise disciplined for failure to meet required ERI or other customer satisfaction survey results (RFP 4); (4) all UPN documentation showing the dates and result of UPN placement for specified employees (RFP 5); (5) all per-

formance-related documents for all employees in Bob Powell's unit[6] (RFP 6); (6) all documents "applicable to the Texas CSA" written by or sent to or from various named individuals "concerning the ERI surveys" (RFP 9); (7) all reports showing ERI results for all units in the Texas CSA (RFP 10); (8) all actual ERI surveys for all employees in the Texas CSA (RFP 11); (9) all documents in which the ERI survey in the Texas CSA from January 1, 2007 to present is "mentioned, discussed, or analyzed" (RFP 12); and (10) all documents that relate to the decisions made about which customers or which adjuster's customers were selected to be called for ERI or CRI surveys (RFP 13). (Doc. 23–2 at 4–8).

Defendant argues that in Plaintiff's Second RFP Numbers 1, 2, 4–6, and 9–13, she seeks documents that (1) are outside the South Texas Property MCO; (2) relate to other performance measures besides ERI surveys; and (3) are not tailored to the relevant time period of January 1, 2009 to December 31, 2011. (Doc. 22 at 23–24). Additionally, Defendant argues that RFP 4 should be limited to property adjusters who received a UPN for unacceptable performance on an ERI. *Id.* at 24. Defendant also argues that RFP 12 is overbroad because it asks for documents in which the ERI survey has merely been mentioned. *Id.; see also* Doc. 32 at 17–18 (Defendant's response brief).

Plaintiff responds that Defendant's objections to RFP 4 should be overruled because that limitation would stifle her ability to prove that Defendant "coached" younger employees but put older employees on a UPN. (Doc. 27 at 27). As to RFP 12, Plaintiff asserts that Defendant has already conceded that the ERI surveys are relevant. *Id.* at 28. Plaintiff asks that Defendant be given 30 days to produce all the documents given the delays attendant to its production so far. (Doc. 36 at 9).

For the reasons stated above, Defendant's *Motion for Protective Order* is **DENIED** and Plaintiff's *Motion to Compel* is **GRANTED** as to RFPs 1, 4, 10, 11, and 13. As to RFP 5, Defendant's *Motion for Protective Order* is **DENIED** and Plaintiff's *Motion to Compel* is

**GRANTED** to the extent that Defendant must produce the documents listed in the RFP relating to any UPN placement for any Texas CSA outside adjuster who was placed on UPN for failure to meet the required results on an ERI, CRI or ICSS survey. All time frames are limited to the time period from January 1, 2009 to December 31, 2011. Defendant's *Motion for Protective Order* is **GRANTED** and Plaintiff's *Motion to Compel* is **DENIED** as to RFPs 2, 6, 9, and 12 because those RFPs are overbroad.

## IV. CONCLUSION

Defendant's *Motion for Protective Order* (Doc. 21) and Plaintiff's *Motion to Compel* (Doc. 26) are **GRANTED IN PART.** Defendant is **DIRECTED** to respond to the discovery ordered, and to supplement any previously produced discovery to comply with the Court's rulings, within 30 days of the date of this order. The discovery shall be provided to Plaintiff prior to the corporate depositions of Vaclavik and Kiehn. Plaintiff's *Motion for Leave to File Supplemental Appendix to Reply Brief* (Doc. 33) is **GRANTED.**

---

**6.** It appears that Bob Powell was Plaintiff's supervisor. (Doc. 33–1 at 3–5).