**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 9, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JIM P. BLAIR, personal representative for
the Estate of Tracy Blair, deceased,

      Plaintiff - Appellant,

v.

ALCATEL-LUCENT LONG TERM
DISABILITY PLAN,

      Defendant - Appellee.

No. 16-7062
(D.C. No. 6:15-CV-00145-FHS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.
_____

Tracy Blair[1] received long-term disability benefits under the Alcatel-Lucent

Long Term Disability Plan (the Plan). Alcatel-Lucent funds the Plan but Connecticut

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Tracy Blair died after filing this appeal. Jim Blair, her husband and personal representative, was substituted as the plaintiff-appellant. Nevertheless, we will continue to refer only to Ms. Blair in this appeal.

General Life Insurance Company (CIGNA)[2] administers the claims (claims administrator). When CIGNA terminated Blair's benefits, she brought this Employee Retirement Income Security Act (ERISA) suit seeking review of the decision. After review, the district judge entered summary judgment for the Plan; Blair wants us to alter that result. We affirm.

## I. Background

Blair was employed as an account/territory sales representative at Alcatel-Lucent from 2008 until she suffered a mental health issue in 2011. From May to November 2011, she received short-term disability benefits while on payroll. She then filed for long-term disability benefits (off payroll) under the Plan. The Plan defines a "disabled" employee as one who was "prevented by reason of such disability, other than accidental injury . . . , from engaging in his or her occupation or employment at the Company" for the one-year period following short-term disability benefits. Aplt. App. Vol. 6 at 721. According to the Plan, an employee is disabled after this one-year period "if, in the sole opinion of the Claims Administrator, [she] is determined to be incapable of performing the requirements of any job for any employer, . . . for which [she] is qualified or may reasonably become qualified by training, education or experience, other than a job that pays less than 60 percent of [her] eligible pay." *Id*.

_____

[2] Connecticut General is the named claims administrator. It is within the CIGNA Group. The parties refer to the claims administrator as CIGNA and we will do the same.

CIGNA denied Blair's claim for long-term benefits on February 1, 2012, concluding her "cognitive defects [were] self-reported" and her "providers [did] not provide measurable data or specific examples to quantify impairment."[3]  Aplt. App. Vol. 4 at 373.  Two days later, she began seeing Dr. Charles Lester, a psychiatrist. Based on her panic attacks as well as her work and family stressors, Lester diagnosed her with "Severe Major Depression Recurrent Episode" and prescribed various medications and individual therapy.  *Id*. at 385–86.  On February 9, she appealed from the denial (in-house appeal).

About three weeks later, Blair called Lester, complaining about one of her medications not working.  Lester discontinued the medication and added two others. Though Blair saw Lester again in late March, CIGNA did not consider this visit on appeal.  Rather, in April, it overturned its previous decision and awarded her long-term benefits dating back to November 2011, when her short-term benefits ceased. In May 2012, the Social Security Administration (SSA) awarded Blair disability benefits with an onset date of May 23, 2011.  CIGNA had referred her to an SSA representative and paid for her legal representation.  Her monthly long-term disability benefits were reduced by the amount she received from the SSA each month.

From 2012 to 2013, Blair continued treatment with Lester.  Throughout 2012, she reported crying spells, anxiety, panic attacks, and being easily overwhelmed,

---

[3]  Prior to the denial of long-term benefits, Blair's primary care physician was Dr. Timothy W. Holder and she was seeing Karen Doney, a licensed clinical social worker, for counseling.

though she indicated some improvement toward the end of the year. Lester found her positive for anxiety and depression and adjusted her medications periodically. By the beginning of 2013, she reported being depressed some days but not others. She was no longer suffering panic attacks. Lester still considered her positive for anxiety and depression. By February, his treatment notes indicate she was "Negative for Anxiety," though she still struggled with depression. Aplt. App. Vol. 5 at 547. In May, she felt she was making progress and Lester noted she was "improving," but he still thought she was positive for depression. *Id*. at 549–50. By July, however, even though Blair still experienced depression "under major stress," Lester found "[n]o symptoms at this time" and found her negative for anxiety and depression. *Id*. at 551.

Also in July 2013, CIGNA sent a letter to Lester asking for Blair's current symptoms, intensity of treatment, and plan to return to work. Lester replied in August:

> [Blair] has made some gains with the combination of medication treatment and counseling but she is still not able to work at the present time. She continues to have panic attacks and persisting depression. She is still poorly stress tolerant, has impaired concentration and has short term memory problems that cause significant difficulties with her functioning. With any stressor of moderate intensity or higher occurs she will have severe panic attacks and she will decompensate into significant depression. It is still unclear if she will be able to return to employment but this remains her goal and I believe that she is significantly motivated to try and improve and return to employment. I would not anticipate her improving sufficiently to return to work prior to 10/01/2013 and again it is possible that she will never reach a level of improvement that will allow her to seek employment. She is presently taking Prozac 120 mg daily, Deplin 15 mg daily, Wellburtin XL 450 mg daily and Xanax .5 mg four times daily as needed for anxiety. She is also in weekly individual therapy. She is able to care for her basic needs as far as grooming; she is able to drive when not actively having

anxiety attacks. She is relatively isolated with most of her social interactions being with direct family. Please contact me if you have any questions regarding the matter.

*Id*. at 557.

On August 5, 2013, Dr. Peter Volpe, CIGNA's Associate Medical Director, reviewed Lester's letter and the claim file. He noted Lester's May and July 2013 office visit notes show Blair as improving and did not "support the presence of a mental impairment of severity sufficient to necessitate restriction from work." Aplt. App. Vol. 2 at 152. He also determined Lester's statement about Blair being unable to work because of cognitive impairments was not credible because it was inconsistent with (1) his office visit notes that state she has no cognitive impairments and (2) the low intensity of treatment he provided to her (office visits every two months).

In October 2013, Blair told Lester she was "doing a lot better," her depression was "well controlled," and she was "not having panic attacks." Aplt. App. Vol. 5 at 573. He noted her positive for anxiety but negative for depression.

On October 22, CIGNA contacted Dr. James Beebe, Blair's primary care physician since July 2013.[4] Beebe said he was not restricting Blair from returning to work and confirmed her disability was not physical.

---

[4] Pursuant to the Plan, CIGNA routinely requested information from Blair to ensure her continued disability. On June 5, 2013, Blair completed a Disability Questionnaire for CIGNA. In it, she named Beebe as a treating physician.

On October 24, CIGNA revoked Blair's benefits. It relied on Beebe's contact as well as Lester's office visit notes (three) from February 2013 to July 2013, which showed Blair's condition had improved and she was suffering no symptoms as of July 1, 2013. It also relied on Volpe's review of Lester's letter and the claim file. It concluded:

> The available medical records do not reflect a severity level that is consistent with the presence of a psychiatric functional impairment. The letter from Lester dated August 2, 2013 regarding your mental condition, indicating that you were unable to work because of cognitive impairments, are not credible because it does not reflect the content of the office visit notes, which indicated that you had no cognitive impairments. In addition, the low intensity of treatment provided by Lester, with office visits occurring every two months, does not support the presence of impairments sufficient to necessitate restriction from work.

*Id*. at 562. Blair appealed.[5]

In her appeal letter, dated February 10, 2014, she claimed to still be experiencing major depression with panic disorder and, as a result, had short-term memory problems, continued panic attacks, daily anxiety problems, and impaired concentration. She opined: "While I am doing better than I originally was, I am still not able to effectively function to do my job, or any job for that matter." *Id*. at 564.

On December 4, 2013, Blair called Lester's office saying she was having panic attacks, severe anxiety, and depression because it was the first holiday without her

---

[5] Once a claimant perfects an appeal in writing, she has the right to review pertinent Plan documents, provide a written statement of the issues, and submit any other documents in support of her claim. CIGNA must timely decide the appeal in writing or it will be deemed denied.

mother, who had died in February 2013. However, by January 13, 2014, Blair

reported her "depression [was] doing pretty well." *Id*. at 566. She included these

notes and the notes from October 2013 with her appeal, along with another letter

from Lester, dated February 6, 2014, essentially restating his August 2013 letter but

revising the date she could return to work, this time not before June 1, 2014.

CIGNA referred Blair's appeal to Dr. Maria Antoinette D. Acenas for an

independent review. Acenas, a board certified psychiatrist, reviewed Blair's records

and discussed her condition with Lester. She concluded Blair met the DSM

(Diagnostic and Statistical Manual of Mental Disorders) criteria for major depression

but concluded she was not mentally, cognitively, and/or behaviorally impaired.

Relying on Acenas's review, CIGNA denied Blair's appeal on April 14, 2014:

> The records reflect that your symptoms of depression are still present
> and Lester has made adjustments to your medications. However the
> records do not indicate that your depression and anxiety has deteriorated
> to levels of severity that would have required extensive and more
> aggressive treatment such as inpatient psychiatric hospitalization or
> intensive outpatient program, which would have been more indicative of
> a severe psychiatric impairment.

Aplt. App. Vol. 6 at 713. CIGNA considered Blair's SSA benefits in its review. It

"confirmed that there [was] no new information in [her SSA] file since the time of

[her] initial [SSA] award" and concluded it was "in receipt of more recent

information than the SSA had to consider at the time of its decision." *Id*. It stated a

second appeal was "not required but will be accepted if you have different or

additional information to submit." *Id*.

7

Blair submitted a second appeal. With it, she included only an additional letter from Lester dated May 17, 2014:

> I have reviewed your denial of [Blair's] disability claim. It is my opinion that you are misconstruing my clinical notes, hopefully unintentionally. Ms. Blair has been significantly impaired for the entire time I have seen her. At one point, in May of 2013[,] she was improving and it was my hope that she would recover and be able to return to work but she regressed. At no point . . . have I believed that she had recovered sufficiently to return to work. She has been seen at a general interval of 6 weeks by myself to allow for sufficient time for medication changes to reach full efficacy. . . . She remains not capable of working and there is significant doubt as to whether she will reach a level of functioning that will allow this given the length of time she has remained symptomatic. It is unclear to me how you can deny her claim based on strictly a review of my records when in every case where I have been asked I have clearly stated her inability to work. I am again stating very clearly that at this point in time she is not capable of working.

*Id*. at 716.

CIGNA did not respond to the second appeal, but its records noted the receipt of her appeal and Lester's letter. The file notes explained: "No additional, supporting medical records, therefore the appeal was not accepted." Aplt. App. Vol. 1 at 115.

Blair's complaint asked the district court to review and reverse CIGNA's termination of her long-term benefits. *See* 29 U.S.C. § 1132(a)(1)(B). The district judge concluded the decision was supported by substantial evidence and not arbitrary or capricious.

## II. Discussion

### A. *Standard of Review*

As the parties agree, the Plan gives CIGNA discretion to decide benefits eligibility. Normally, and as here, when a benefit plan "confers upon the

8

administrator discretionary authority to determine eligibility for benefits or to interpret plan terms, a deferential standard of review is appropriate." *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012) (emphasis and internal quotation marks omitted). "In such cases we review the administrator's decision for abuse of discretion." *Id*.

Blair balks, arguing the appropriate standard of review is de novo because CIGNA did not decide or communicate with her regarding her second appeal. She cites several cases where we exercised de novo review when a plan administrator did not decide an appeal or failed to render a timely decision. *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003) (administrator never issued a decision on initial appeal); *see also LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 797–98 (10th Cir. 2010) (administrator failed to render decision within sixty days as provided by the plan); *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009) (administrator did not timely decide initial claim or appeal).

The cited cases, however, involved an <u>initial</u> <u>mandatory</u> appeal. ERISA requires plans to provide one appeal and plan administrators must timely decide those appeals. *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1154 (10th Cir. 2009). If they do not, we will deem the administrator's decision a denial (deemed denial). *Gilbertson*, 328 F.3d at 631-32. Because deemed denials come by operation of law rather than through an exercise of discretion, our review is de novo.

9

ERISA does not demand a second opportunity for appeal, *Hancock*, 590 F.3d at 1154, and the Plan does not require one. Therefore, CIGNA was not obliged to, and ultimately did not, allow a second appeal.[6] CIGNA's solicitous approach in initially considering her second appeal does not change our standard of review of its timely decision on her first appeal, which we review for abuse of discretion. *See Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 804–05 (8th Cir. 2014); *Harvey v. Standard Ins. Co.*, 503 F. App'x 845, 848–49 (11th Cir. 2013) (per curiam) (unpublished). In ERISA cases, that standard is "interchangeable" with the "arbitrary and capricious standard." *Foster*, 693 F.3d at 1231–32 (internal quotation marks omitted). We will uphold CIGNA's decision "unless it is not grounded on *any* reasonable basis." *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (internal quotation marks omitted).

### B. *Judicial Notice*

Before turning to the merits, we pause briefly to address Blair's argument about her denied request for judicial notice.

---

[6] Blair argues CIGNA's decision not to address the evidence submitted with her second appeal was arbitrary and capricious. But CIGNA was not obligated to provide a second appeal or decide it. In any event, the only evidence submitted was a letter from Lester contesting CIGNA's conclusions regarding his treatment notes. The substance of this evidence was not new, nor was CIGNA required to defer to it. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) ("We hold that [under ERISA] plan administrators are not obliged to accord special deference to the opinions of treating physicians."); *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011) (concluding ERISA administrators owe no special deference to a treating physician's conclusions).

Blair asked the judge to take judicial notice of (1) an excerpt concerning "panic attack specifier" from various versions of the DSM and (2) the prescribing information for two of her medications. He refused because these exhibits were neither generally known in the court's territorial jurisdiction nor could he decide their accuracy from readily determined sources. *See* Fed. R. Evid. 201(b). He limited his review to the administrative record, which did not contain these exhibits.

Blair claims it was an abuse of discretion to deny judicial notice of her exhibits and for that reason she requests we take judicial notice. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007) ("We review the district court's decision not to take judicial notice for abuse of discretion."). According to her, the DSM is not subject to reasonable dispute and has been judicially noticed in other cases.[7] Moreover, the prescribing information for her medications is a matter of undisputed public knowledge and was needed for the judge to understand them.

But when "reviewing a plan administrator's decision for abuse of discretion, . . . federal courts are limited to the 'administrative record'—the materials compiled

---

[7] The DSM is a diagnostic tool employed by mental health professionals. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 19 (5th ed. 2013) ("The primary purpose of DSM-5 is to assist *trained clinicians* in the diagnosis of their patients' mental disorders as part of a case formulation assessment that leads to a fully informed treatment plan for each individual." (emphasis added)). Their opinions are ultimately based on their expertise. Judges are not so trained and should not presume to have the ability to adequately apply the DSM to specific fact situations. Indeed, "[u]se of DSM-5 to assess for the presence of a mental disorder by nonclinical, nonmedical, or other insufficiently trained individuals is not advised." *Id.* at 25.

by the administrator in the course of making his decision." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002); *see also Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) ("[W]e have frequently, consistently, and unequivocally reiterated that, in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record." (internal quotation marks omitted)). Orderly process demands such a rule.

An administrator's decision rests on the materials in the file. It would be unfair to say an administrator abused its discretion by not considering evidence that was not of record. *Murphy*, 619 F.3d at 1159. Moreover, "Congress designed ERISA to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Allowing [a] court to go beyond its limited scope of review and consider extra-record materials would undermine this goal, and both prolong the decisionmaking process and inject greater uncertainty into that process."[8] *Id*. (citation and internal quotation marks omitted).

---

[8] In at least one respect, our review in this case is similar to the review accorded an agency's decision—one who has failed to provide information to the agency profits nothing in providing it to us. *See Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) ("[O]rdinarily review of administrative decisions is to be confined to consideration of the decision of the agency and of the evidence on which it was based. The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." (citation, ellipses, and internal quotation marks omitted)).

Blair admits the DSM excerpts and the prescribing information are not part of the administrative record. She simply says CIGNA should have included them in the record because Acenas referenced the DSM-5 and mentioned her medications. But Acenas noted only her agreement with Blair's DSM-5 diagnosis—major depression—not panic attacks. In any event, if Blair had wanted CIGNA to consider the DSM and the prescribing information in more detail, she should have said so (and provided them) in her in-house appeal. *See Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) ("If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence."). She did not and because she did not, they are out of bounds.

*C. Substantial Evidence*

Blair tells us CIGNA's decision to terminate her benefits is not supported by substantial evidence and is, therefore, arbitrary and capricious. She is half right.

An administrator's discretionary denial of benefits not supported by substantial evidence is arbitrary and capricious. *Graham*, 589 F.3d at 1357. However, the real challenge is evaluating the evidence. Substantial evidence is "evidence that a reasonable mind might accept as adequate to support the conclusion." *Id*. at 1358 (internal quotation marks omitted). It is "more than a scintilla but less than a preponderance." *Id*. (internal quotation marks omitted). "Substantiality of the evidence is based upon the record as a whole." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002).

13

In terminating benefits, CIGNA relied in part on Lester's treatment notes from February to July 2013. Those notes reflect continued improvement in Blair's anxiety and depression from February to May and negative for both by July. Blair does not deny the substance of these notes but says she only "briefly stabilized" in the summer of 2013 and still was not capable of working due to "the massive amounts of medications she took, which the evidence shows were consistently increased and changed." Aplt. Opening Br. at 36. She says "[t]he medications and regular changes in those medications, standing alone, demonstrate [she] is and was severely impaired and not getting better," but worse. *Id*. at 37. Her argument actually begs the pertinent question.

The question is not whether Blair suffered from impairments but whether she was unable to work due to the impairments even with medication and counseling. Volpe and Acenas said no; Beebe agreed. As we explain, CIGNA reasonably relied on their opinions. Although she claims a relapse in her condition, a fair reading of the record reveals steady improvement. To the extent she is arguing the medications and their dosages prevented her from working, nothing in the record supports such a theory. Rather, the record demonstrates she responded to them and they were helping. Lester never blamed her medications or the dosages for her alleged inability to work.

Blair faults CIGNA's reliance on Volpe's and Acenas's file reviews, arguing neither constitutes substantial evidence supporting the termination of benefits because Volpe and Acenas ignored Lester's medication management of Blair. But

14

Acenas obviously considered Blair's medications and adjustments to them because she mentioned them. Blair's main complaint is that she did not accord them sufficient weight. But, again, nothing in the record demonstrates the medications themselves prevented Blair from working. Rather, the record shows Blair was responding well to them.

She also faults Volpe for finding Lester's statement concerning Blair's cognitive impairments not credible without first "calling or writing Dr. Lester and asking about it." Aplt. Opening Br. at 48. However, Blair admits "[t]here is ambiguity about Dr. Lester's reference to cognitive impairments" in his August 2013 and February 2014 letters to CIGNA because he made no mention of them in his office visit notes. *Id*. Volpe merely accentuated the obvious.

Continuing, Blair says Acenas did not properly account for her panic attacks. She points to the DSM regarding panic attacks, something outside the record.[9] She also says Acenas relied on Lester's October 2013 office visit note saying she is doing a lot better and not having panic attacks but ignored his subsequent reports (December 4, 2013 (phone call), January 13, 2014 (treatment note), and February 6, 2014 (letter to CIGNA)) showing they reoccurred.

But the question is not whether Acenas's opinion alone is substantial evidence. Rather, we ask whether there is substantial evidence in the record as a whole supporting CIGNA's termination of benefits. *Caldwell*, 287 F.3d at 1282. The

---

[9] *See supra* note 7.

15

answer is yes. Blair nitpicks CIGNA's decision. It is common in these cases for claimants to emphasize the evidence in their favor while ignoring evidence to the contrary. Our review is not so narrow; we must look to the record as a whole and defer to CIGNA's decision if it is supported by substantial evidence.

Lester's office visit notes show Blair's condition to be improving and her response to treatment encouraging. Both Volpe and Acenas reviewed the claim file and considered Blair able to work. Beebe informed CIGNA he was not restricting Blair from returning to work. Blair was only seeing Lester every six to eight weeks. Moreover, she was able to perform activities of daily living.

The only evidence of Blair's inability to work was Lester's opinion and Blair's self-reports in her appeal letter.[10] However, while an administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," ERISA does not require an administrator to defer to a treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003) ("We hold that [under ERISA] plan administrators are not obliged to accord special deference to the opinions of treating physicians."); *see also Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011) (concluding ERISA administrators owe no special deference to a treating physician's conclusions). CIGNA was not required to defer to Blair's self-reports of not being able to work in the face of other reliable medical evidence (Volpe, Acenas, and

---

[10] Although Blair regularly saw a therapist, she relies solely on Lester's opinion and her self-reports.

16

Beebe) showing otherwise. *See Rizzi v. Hartford Life & Accident Ins. Co.*, 383 F. App'x 738, 753 (10th Cir. 2010) (unpublished).

Blair is persistent, however. Having lost on substance, she points to "procedural irregularities" for discounting CIGNA's decision. Aplt. Opening Br. at 41.

First, she claims CIGNA had an affirmative duty to obtain her SSA records, records from her new therapist, and additional treatment notes or information from Lester. But, as the record shows, CIGNA did request her SSA records and had them at the time of her first appeal because it "confirmed . . . there [was] no new information in [her SSA] file" since the initial award of SSA benefits. Aplt. App. Vol. 6 at 713. It also reveals that Blair began seeing her new therapist in early January 2014, after CIGNA's initial decision to terminate benefits and while that decision was on appeal. On April 2, 2014, Lester told Acenas about Blair seeing a new therapist, but Blair failed to provide the treatment notes from that therapist to CIGNA. Nor did she update her claim file with Lester's most recent treatment records. Again, "[i]f a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence."[11] *Sandoval*, 967 F.2d at 381.

_____

[11] We recognize administrators "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004). Blair says CIGNA did just that because it was on notice

(continued)

17

Blair also says that because the disability in this case is mental illness, CIGNA should have personally examined her rather than rely solely on a review of her medical records (file review).  She relies on *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 701–02 (6th Cir. 2014) ("[F]ile reviews are questionable as a basis for identifying whether an individual is disabled by mental illness.").  But we have uncovered no similar case law in our Circuit and Blair points to none.  Although the Plan gives CIGNA the right to have a physician of its choice examine Blair, it does not <u>require</u> CIGNA to personally examine the claimant, even one alleging mental illness.  *See Fought v. UNUM Life Ins. Co.,* 379 F.3d 997, 1015 (10th Cir. 2004) (per curiam), *abrogated in part on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008); *see also Rall v. Aetna Life Ins. Co.*, 565 F. App'x 753, 757 (10th Cir. 2014) (unpublished).

---

she had a new therapist and knew Lester continued to treat Blair but did not obtain these new records.

However, these new records came to be during Blair's appeal of CIGNA's initial decision.  As part of her in-house appeal, Blair had the right to provide CIGNA any other information in support of the claim.  *See supra* note 5.  She did not, not even for purposes of her second appeal.  Instead, she sent only an additional letter from Lester.  Merely noting an event (Lester advising that Blair was seeing a new therapist) is insufficient.  It borders on a waiver because it suggests an issue and then abandons any attempt to properly document it.  *Cf. United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006) ("[W]aiver is the intentional relinquishment or abandonment of a known right"; "a party that has waived a right is not entitled to appellate review." (emphasis and internal quotation marks omitted)).  Moreover, the *Gaither* rule applies only when the administrator has "little or no evidence in the record to refute" the claimant's theory of entitlement.  394 F.3d at 807.  That is not the case here.

She also claims CIGNA's sole reliance on a file review to deny benefits is inadequate in light of its credibility determinations—rejecting Lester's claim of cognitive impairments and Blair's subjective complaints in her appeal letter. Again, she relies on a Sixth Circuit case. *See Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006). And, again, we have uncovered no similar Tenth Circuit authority and Blair cites none. Indeed, as stated above, an administrator need not defer to a claimant's subjective complaints. *See Rizzi*, 383 F. App'x at 753. Moreover, Blair admits Lester's reference to cognitive impairments in his letters to CIGNA was inconsistent with his treatment notes. *See* Aplt. Opening Br. at 48.

### D. Judicial Estoppel

We now come to the end. Blair argues CIGNA is judicially estopped from arguing Blair is not disabled because that position is inconsistent with the position it took when it required her to apply for SSA benefits, paid for her SSA representation, and benefitted from her receiving those benefits.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (brackets and internal quotation marks omitted). This rule, known as judicial estoppel, "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. at 749–50 (citation and internal quotation marks

19

omitted).  Because it is a "harsh remedy," we "apply it both narrowly and cautiously."  *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1207–08 (10th Cir. 2017) (internal quotation marks omitted).  Judicial estoppel does not apply here.

The Plan's position—Blair was not disabled <u>for purposes of ERISA as of October 24, 2013</u>—is not inconsistent with its position that she was disabled <u>for purposes of SSA benefits starting in May 2011</u>.  *See Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (for judicial estoppel to apply, "a party's subsequent position must be clearly inconsistent with its former position." (internal quotation marks omitted)).  That is because the ERISA standard for disability benefits is different than that for SSA benefits, in particular, ERISA owes no deference to treating physician's opinions whereas the SSA must give them special weight.  *Nord*, 538 U.S. at 834; *see also Eugene S.*, 663 F.3d at 1135; *see also Meraou v. Williams Co. Long Term Disability Plan*, 221 F. App'x 696, 706 (10th Cir. 2007) (unpublished) ("The determination of disability under the Social Security regime cannot be equated with the determination of disability under the ERISA regime." (internal quotation marks omitted)).

Moreover, the SSA made its determination in May 2012 (that she was disabled starting in May 2011) without the benefit of Lester's treatment notes from late 2012 and early-/mid-2013, which show Blair's condition had improved.  CIGNA had the benefit of those notes, as well as Volpe and Acenas's independent reviews, when it made its decision to terminate benefits in October 2013.  We reject any notion that Blair's receipt of SSA benefits "required [CIGNA] to continue to pay benefits under

20

the Plan despite its finding that she had failed to establish her entitlement to such continued benefits under the Plan requirements."[12] *Meraou*, 221 F. App'x at 706.

**AFFIRMED.**

**Entered for the Court:**

**Terrence L. O'Brien**
Circuit Judge

---

[12] Blair also maintains CIGNA did not consider the vocational standards under the Plan, which require that she be able to perform a job for which she is qualified by her education, training, or experience and earn 60 percent of her pay. Instead, it merely decided that she was not precluded from working. But CIGNA did conclude that Blair "was not disabled from her own occupation," *see* Aplt. App. Vol. 5 at 586, and also concluded she no longer suffered any mental, behavioral, or cognitive impairment precluding her from working "any occupation," *id*. at 562. Those conclusions are sufficient.